THE SAVANNAH, FLORIDA AND WESTERN RAILWAY *vs.* STEWART.

HALL J.

1. In a suit by a widow against a railroad company for the homicide of her husband, in case of a recovery, she may recover the full value of the life of the deceased, as shown by the evidence. The *onus* is upon the plaintiff to establish the amount of damage which she is entitled to recover, and one element of such proof is the number of years the deceased would probably have lived. If there is no proof on this point, the plaintiff has failed to make out a case, and the verdict should be for the defendant.

2. There being no evidence to show that the person killed was drunk or in such a condition of intoxication as to put the engineer on notice of the fact in time to have checked his engine, charges based on that hypothesis were erroneous.

3. When a personal injury has been shown to have been done by the locomotives, or cars, or other machinery of a railroad company, or by any person in its employment or service, the presumption is against the company, but it may defeat a recovery by establishing either of the following defences: That its agents have exercised all ordinary and reasonable care and diligence to avoid the injury; that the damage was caused by the negligence of the person injured; that he consented to it; or that the person injured, by the use of ordinary care, could have avoided the injury to himself, although caused by the defendant's negligence. If both the person injured and the agents of the company are at fault, there may be a recovery, but the damages are to be diminished by the jury in proportion to the default of the injured party.

(*a.*) Railroad companies are entitled not only to a clear track, but to the unobstructed use of all the means indispensable to the discharge of their duties. But while the obligation of the company to a trespasser on its track may not be the same as to passengers, employés or other persons having business with it and whose presence there is authorized, or even to persons who were there by its consent as a favor or gratuity; still, one who places himself upon its road, even in violation of the statute, does not forfeit all right to have its agents regard his personal security or life, or exempt it from liability for injury, if, by the exercise of proper precaution on its part, the casualty could have been avoided.

(*b.*) If a person appears upon a railroad track in a helpless condition, and the engineer and his assistants discover him in time to stop the train before reaching him, but recklessly, or even incautiously, neglect to do so, the company would be liable in damages, in proportion to its own default and that of the other party.

v 71–28

The Savannah, Florida and Western Railway *vs.* Stewart.

(*c.*) This case distinguished from *Central Railroad vs. Brinson*, 70 *Ga.*, 207.

(*d.*) The facts of this case did not warrant a recovery against the defendants.

JACKSON, C. J., (BLANDFORD, J., joining him) concurred specially as follows :

1. There is no invariable rule for estimating the value of a life. Age, health, habits, money made by one's labor, furnish data from which such value may be decided by a jury. Tables of the probable length of life and its probable worth may bo useful, but are not conclusive or absolutely essential for that purpose.

2. Sections 3034 and 2972 of the Code are *in pari materia*, but not identical. They provide for separate defences to suits against railroads. The first applies where the person injured causes the injury to himself, or consents thereto ; the second applies where the consequences of the present or antecedent negligence of the defendant are impending, but may be avoided by ordinary care on the part of the other party. Both include the doctrine of contributory negligence, and provide for a recovery in part, in case the negligence of both parties contributed to the injury.

3. Railroad companies are liable for injuries resulting from want of all ordinary and reasonable care in all cases, in general, and for the want of extraordinary care in the case of passengers and others under their care. What is ordinary and reasonable care depends on the facts of each case.

4. Merely to walk upon the track of a railroad is not an unlawful intrusion in such sense as to be an indictable offence under §§4437, 4438 of the Code.

5. No opinion is expressed on the facts of the case.

6 Reversal is concurred in because the charge probably confused the jury, and justice demanded a new trial.

February 9, 1884.

Railroads. Damages. Negligence. Husband and Wife. Charge of Court. Before Judge MERSHON. Ware Superior Court. April Term, 1883.

Reported in the decision.

CHISHOLM & ERWIN ; J. C. NICHOLLS, for plaintiff in error.

J. C. McDONALD ; L. A. WILSON ; HARRIS & SMITH, for defendant.

HALL, Justice.

The plaintiff, as the widow of James Stewart, instituted her suit against the Savannah, Florida and Western Railway Company, under Code, §2971, to recover damages for the homicide of her husband, who, she alleged, had been killed by the careless and negligent running of the trains of the defendant; and upon the trial a verdict was rendered in her favor. The defendant moved to set aside this verdict and asked a new trial in its original and amended motion, upon the following grounds : That it was contrary to law and evidence, to the weight of evidence, and was without evidence to support it.

(1.) Because the court charged the jury in said cause as follows : " It is alleged on the part of the plaintiff that her husband was killed by the running of the cars or other machinery of the railroad company, or that he was wounded, and died from the effects of it. You look into the evidence first, to find out whether that is true; if you find that it was true that he was killed by the agents of the company, by their trains, or by reason of the running of their trains or engine, this would entitle the plaintiff to recover such damages as may have been proved to you, unless the defendant should show that, in order to rebut that presumption, they used all reasonable and ordinary diligence for the purpose of preserving that person from harm and protecting him;" said charge being erroneous: 1st. In that it required the defendant to show it used "all reasonable and ordinary diligence." 2d. In that it gave the jury to understand that the defendant owed a duty to the husband of the plaintiff of "preserving him from harm and protecting him," by the exercise of all reasonable and ordinary care. 3d. In that it required the jury to find a verdict for the plaintiff even though James Stewart could have avoided the effect of any negligence on the defendant's part, by the exercise of proper care.

(2.) Because the court charged the jury in said case as

follows· " If they (meaning the defendant company) did not use all proper care and ordinary diligence to protect this person (meaning James Stewart), then they would be liable; then if you find that state of facts exists, you will look further in order to determine, to see whether or not the deceased was diligent or negligent;" said charge being erroneous, in that it held the defendant liable, unless the defendant used all proper care and ordinary diligence to protect James Stewart.

(3.) Because the court charged the jury in said case as follows: " If you find he (meaning James Stewart) contributed to the accident by his own negligence, or if you find it was with his consent, he could not recover at all in that case. If he contributed at all, however, by way of negligence, to the accident, then, while the plaintiff in that case may recover, you would be authorized to reduce the amount of the recovery in proportion to the amount of his contributory negligence;" said charge being erroneous: 1st. In that it laid down two contradictory rules as to the result of contributory negligence on James Stewart's part and tended to confuse the jury. 2d. In that, in effect, it instructed the jury that James Stewart's negligence would only authorize a reduction of the recovery. 3d. In that said charge is otherwise illegal.

(4.) Because the court charged the jury in said case as follows: " It is set up in this case that the accident was unavoidable, under the circumstances; to determine that now, you must look solely to the evidence as given. If a person goes upon the track of a railroad company, upon that line they are held to some diligence themselves, and if they voluntarily place themselves in a perilous position, while danger is approaching with their knowledge, and the train is approaching with their knowledge, that would be negligence; and if they were to lose their lives while in such position, placed there willingly and knowingly, then that would either defeat or reduce the recovery according as the evidence may show that it was impossible or by rea-

sonable care and diligence on the part of the agents of the company the accident could not be averted, then no recovery could be had. But then if it should be found that after he had placed himself in a position of peril that with a proper degree of diligence and with the appliances at hand his life could have been saved, then a recovery could be had;" said charge being erroneous: 1st. In that said charge required of defendant's agents a greater degree of diligence than was required of them by law under the evidence in the case. 2d. In that said charge is otherwise illegal.

(5.) Because the court charged the jury in said case as follows: " I charge you that in looking into the question of diligence, that you take all the evidence and try the case in its entirety together; take the whole case together, and if you find from the evidence that the schedule time was a given number of miles per hour and should find that the train was on its schedule time, but should find that they were running much faster than the time allowed them, that would be a proper matter for you to consider in connection with the question of negligence. You take the whole case in all its bearings, for the purpose of finding that fact, as much depends in this case upon the question of negligence." Said charge being erroneous: 1st. In that it was not warranted by the evidence. 2d. In that it expressed an opinion to the effect that the running of the train faster than the time allowed would constitute negligence. 3d. In that said charge was otherwise illegal.

(6.) Because the court charged the jury in said case as follows: " If you find from the evidence, as is set up in this case, that the deceased was drunk at the time he was killed, you will look further then to determine whether or not that contributed to or caused the accident; you will look further to the evidence to determine whether or not his intoxication was of such a character as to place the engineer on notice of that fact in time to have checked his engine." Said charge, or so much thereof as left it to

the jury to determine whether or not Stewart's intoxication was of such a character as to place the engineer on notice of that fact in time to have checked his engine, being erroneous: 1st. In that it was not warranted by the evidence.   2d. In that it was without evidence to support it.

(7.) Because the court charged the jury in said case as follows: "A railroad company nor has anybody any more right to kill a man because drunk than because he is sober. The fact of drunkenness alone gives no such right; but if a person voluntarily gets drunk and places himself in danger and sustains damage by reason of that, then he could not recover, unless the company should have been guilty of gross negligence.   And I charge you that if a person was so drunk as to place himself in a place of peril and render him helpless, and that danger was patent to the engineer at the time, that he would be guilty of gross neglect, if he could have stopped and did not stop."—Said charge being erroneous:   1st. In that it was unwarranted by the evidence, and was without evidence to support it. 2d. In that said charge expressed or intimated an opinion on the facts and as to what had been proved.   3d. In that said charge was otherwise illegal.

(8.) Because the court refused to give the following request to charge, which was presented to the court by defendant's attorneys in writing before the charge to the jury was commenced: "If the jury find that James Stewart was walking on an embankment, and on a place where he might have gotten off by the exercise of reasonable care and diligence before the train reached him, and when the engine was within two or three hundred yards, he voluntarily got on the trestle and by so doing he did not exercise reasonable care and diligence, this was such an act on his part as would prevent recovery by the plaintiff."   But the court, after reading said request to charge, aloud in the hearing of the jury went on and added: "Unless it should appear that they—I can't charge that without qualifying

it—I charge that if it should appear from the evidence that the deceased moved from a place where he could have escaped when the train was within two or three hundred yards, when he could havè escaped without peril, and got on a trestle, which rendered it more perilous on his part, the plaintiff could not recover, unless it should appear from the evidence that by the use of proper diligence the agents of the defendant could have prevented the accident; that it would be contributory negligence, and the plaintiff could not recover, unless it should appear from the evidence that the road was grossly negligent in not saving him."

(9.) Because the court read the said last named request to charge to the jury and then refused the same.

(10.) Because the court qualified said charge as hereinbefore stated.

(11.) Because the court, after charging as requested by defendant, as follows: "If you find that James Stewart was so much under the influence of liquor as to affect his judgment and his ability to care for himself, and that from this cause he undertook to attempt to cross the bridge trestle before the engine reached him, while, if he had been sober, the exercise of ordinary care would have prevented him from so doing, then the plaintiff cannot recover"— added, "always bearing in mind that if the plaintiff in the case, meaning James Stewart, placed himself voluntarily in a perilous position upon the road under any circumstances, that the company would not be liable, if they used ordinary care and diligence to save him; but in any case, if they did not use care and diligence to protect the life of a person, they would be liable in such amount as the jury might find, bearing in mind that where there is contributory negligence on the part of plaintiff it would reduce the recovery."—Said addition to said request to charge, and charging of the same being erroneous: 1st. In that the charge requested should have been given as requested, and without this addition. 2d. In that it instructed the jury that contributory negligence on the part of Stewart would merely reduce the recovery.

(12.) Because the court refused to give in charge to the jury the following request to charge, which was presented to the court in writing by defendant's attorney before the charge to the jury was commenced " The burden of proof is upon the plaintiff to establish the amount of damages which she may be entitled to recover; one element of this proof is that she must show by competent proof the number of years that James Stewart would probably have lived; and if you find there has been no proof on this point, introduced either by the plaintiff or defendant, then I charge you that the plaintiff has failed to make out her case, and your verdict should be for defendant."

(13 ) Because the court refused to give in charge to the jury the following request to charge, which was presented to the court in writing by defendant's attorney before the charge to the jury was commenced: " If you find that when James Stewart went on the bridge trestle the train was so near him that the engineer, by the exercise of all reasonable care and diligence, could not stop the train in time to prevent it from striking him, the plaintiff cannot recover."

(14.) Because the court refused to give in charge to the jury the following request to charge, which was presented to the court in writing by defendant's attorney before the charge to the jury was commenced: "Although railroad employés are bound to use all proper and reasonable care and diligence, yet a railroad company has the right to presume that persons will not trespass upon its right of way; therefore it is under no obligation to take precaution against possible injury to intruders upon it. The duty to guard against injury to a trespasser on the track is no higher than that imposed upon an individual with reference to persons who willfully trespass upon his private premises."

(15.) Because the court charged the jury in said case as follows: " The fact is, it is a question of diligence between the agents; the engineer of that train was an agent of that road at that time, and whatever act he may have

done was the act of the railroad company, and they are responsible for his acts." Said charge being erroneous: 1st. In that it made the defendant liable for all acts of the engineer. 2d. In that it made the defendant liable for all acts of the engineer done at that time without regard to the question of negligence. 3d. In that said charge was otherwise illegal.

Upon the hearing of this motion, a new trial was refused, and to that refusal the defendant excepted. The deceased was between fifty and sixty years of age, and for a long time had lived at Waycross. On the day in question, he attempted to cross the defendant's bridge over the Satilla river to go to Exeter, on the east side of the river. This attempt was made about the time that the fast mail train, running on defendant's line, passed that point. The train was on time, and was running thirty-five miles per hour,—the usual rate of speed required by the schedule, to make thirty miles an hour, including stoppages at stations. There was a heavy down grade from the Red Clay cut on the road, the point from which it was claimed that the defendant could be first seen by the engineer, there was a trestle across the swamp one hundred and seventy-eight yards in length, and distant from the Red Clay cut four hundred yards; on the east end of this trestle was an embankment two hundred and two yards long. When first seen, the deceased was about midway this embankment; at the further end of the embankment was another trestle about one hundred yards long, to the point at which it joined the bridge. The entire distance from the Red Clay cut to the river was about half a mile. When the train came in sight, its whistle was sounded, as was customary. The deceased seemed to take no notice of it, and leisurely pursued his way. He could easily have gotten off the bank at any point before he reached the bridge trestle, but he did not do so; on the contrary, he quickened his pace, and went on the trestle. At the rate of speed the train was running, it must have

approached him very closely before he left the bank and went on the bridge trestle.   Steam had been previously blown off, and as soon as the engineer discovered that the deceased had left the embankment and gone on the trestle, he applied the air-brakes and reversed his engine.   Its velocity was so great, and it had acquired such momentum, however, on the long down grade, that it could not be stopped until it unfortunately ran over deceased, and inflicted the injury from which he died.   The train must have been running very slowly when the collision took place—not more, as was testified, than two miles per hour, as it came to a dead halt in about from fifty to seventy feet beyond the point of collision.   The deceased was warned off the track by the use of all the usual cautionary signals, such as blowing the whistle and ringing the bell. After these signals were given, he could have easily gotten off the bank; and even after he was on the bridge trestle, according to his own witness, Mr. Strickland, he could have returned safely to the bank, and have escaped all danger. He was, when struck, about half way across the bridge trestle.   There was no evidence that this part of the track was ever used by foot-passengers; the only persons who seem ta have used it in this way were those entrusted with the care of the bridge and its appurtenances, and these hands, when approached by a passing train, would let themselves down from the trestle to the stringers below, and allow the train to pass over them; this was an ordinary occurrence.   As to these facts there was no material discrepancy in the testimony of the witnesses for either party; there was really no conflict as to any of them.   The engineer of the defendant, the fireman and conductor, were all examined, and their account of the occurrence is corroborated, in all its essential parts, by the plaintiff's witnesses.   The engineer testifies that he did everything that he could to check the speed of the train, and to stop it as soon as the deceased stepped on the bridge trestle, and his perilous condition was made apparent; that he was on the look-out

from the first moment that he discovered him in this dangerous place, unfrequented by any other persons than the employés of the company. This account of the matter appears to us to be sustained by the circumstances attending the catastrophe, and which were testified to by the witnesses on both sides. There is evidence in the record that the deceased had taken several drinks of liquor, after he received the telegram he was to carry across the river, and before he started with it from Waycross; but it does not appear from any outward manifestations that he was intoxicated. He was, perhaps, rendered somewhat daring and reckless by the liquor he drank; and Mock, the witness who testified to his condition, was apprehensive that he might be imprudent, and might not observe proper care on his dangerous mission, and hence he impressed upon him the necessity of acting with caution. When he started, he carried with him a small flask of whisky; and after the injury, when he was taken up, the persons assisting him smelt spirits. No one testified that he staggered, or that his walking was irregular or unsteady. No other facts were given, as a measure of damages, than his age and the amount of his income. There was no testimony as to the length of time he might be expected to live, or of the present value of such expectancy.

1. The law provides that in such suits, the plaintiff is entitled to "recover the full value of the life of the deceased, as shown by the evidence." Code, §2971. There was no evidence as to what was the value of his life, and hence there was nothing on which to rest this finding. The defendant's written request upon this subject was pertinent and legal. "That the burden of proof was upon the plaintiff to establish by evidence the amount of damages she was entitled to recover," and that "one element of such proof was the number of years deceased would probably have lived; and if the jury found there was no proof upon this point, then the plaintiff had failed to make out her case, and the verdict should be for the defendant"—should

438        SUPREME COURT OF GEORGIA.

The Savannah, Florida and Western Railway vs. Stewart.

have been given by the court.  On this question, the verdict is contrary to law, and without sufficient evidence to support it; and this, without more, would necessitate the grant of the new trial asked.

As there is to be a re-hearing of this case, and as it is desirable that the litigation should end, we will proceed to give our views of the law applicable to the facts contained in the record.  Before doing so, we will dispose of some minor exceptions to the charge of the presiding judge, and of his failure to give in charge certain written requests of the defendant.

2.  The charge instructing the jury to ascertain from the evidence whether or not the intoxication of the deceased was of such a character as to put the engineer on notice of the fact in time to have checked his engine, and the further charge, if he "was so drunk as to place himself in a situation of peril, and render him helpless, and the danger was patent to the engineer at the time, then he would be guilty of gross negligence, if he could have stopped and didn't stop," were erroneous.  While there is evidence that the party had been drinking, there was none that he was drunk.  On the contrary, every witness who testified upon the subject, said he was not drunk; there was certainly nothing going to show that he was rendered helpless by reason of drink.  These facts were not evident to persons in immediate contact with him; how then could they be so patent to the engineer, who was several hundred yards from him, as to bring home notice of his condition to him? Whether these charges announce correct abstract principles, it is needless now to inquire.  For all present purposes, it is sufficient to state, that they are wholly unwarranted by the testimony, and inapplicable to the case as made. That they were prejudicial to the defendant in misdirecting the jury as to the proper issues they were to try, is only too manifest, when taken in connection with the instructions just previously given, as it seems to us, without sufficient occasion, that "neither a railroad company

nor anybody has any more right to kill a man because drunk than because he is sober. The fact of drunkenness alone gives no such right," etc.

3. When the injury is shown to have been done by the locomotive, or cars, or other machinery of a railroad company, or by any person in its employment and service, it is liable for the damage, unless it shall make it appear that its agents have exercised "all ordinary and reasonable care and diligence," and in all cases the presumption is against it. Code, §3033. In cases of personal injuries, and injuries to property, this is the rule of its liability, and one of the defences that it may make to this liability is, that its agents have exercised all reasonable care and diligence in the matter. But this is not the only defence that it can set up to such a claim for damages; it may show that the same was done by the plaintiff's consent, or was caused by his own negligence, Code, §3034, or in cases of personal injury, if by ordinary care he could have avoided the consequences to himself, although caused by the defendant's negligence, he is not entitled to recover. *Ib.*, §2972. The recovery in cases of contributory negligence is provided for by this and §3034. Questions arising upon these several provisions have been so frequently before this court, and have been so uniformly ruled upon in the same way, that it would seem there should be no room left for further contention.

In the *Central Railroad Company vs. Brinson*, 64 *Ga.*, 479, the law is thus laid down by a full bench. After reciting the foregoing sections of the Code, Crawford, J., who delivered the opinion, said: "It will be seen that, although the presumption is always against the company, yet it may rebut that presumption and relieve itself of damages by showing that its agents have exercised all ordinary and reasonable care and diligence to avoid the injury or it may show that the damage was caused by the plaintiff's own negligence; or it may further show that the plaintiff, by ordinary care, could have avoided the injury to himself,

although caused by the defendant's negligence. Upon either of these grounds the defendant may rest his defence.

"But these rules of law will not cover the facts of every case, for it may be that both the plaintiff and the agents of defendant are at fault, and when they are, then, whilst damages may be recovered, they are to be diminished by the jury in proportion to the default of the plaintiff for his want of ordinary care in avoiding the injury to himself." He adds, "The ruling of this court upon these questions has been very decided, and may be found in 38 *Ga.*, 409, 431; 42 *Ib.*, 327; 53 *Ib.*, 12; 60 *Ib.*, 667," to which many more decisions rendered before and since may be added. This exposition of the law, is believed to be as full, clear, and satisfactory as is furnished by any case in our reports; indeed it embodies in a concise and lucid statement, all that had been previously ruled. It was followed, without dissent or qualification, in the subsequent case of *The Georgia Railroad Company vs. Thomas*, 68 *Ga.*, 744, where the judge in the lower court, acting, as was supposed, upon what he conceived to be the ruling of this court in *Georgia Railroad Company vs. Neely*, 56 *Ga.*, 543, seemingly restricted the company's defence to either one of three grounds: First, that its agents exercised all ordinary and reasonable care and diligence; second, that the plaintiff consented to the injury· third, that he caused it solely by his own negligence; and failed to charge the jury as requested by defendant's counsel, " that if the plaintiff, by ordinary care, could have avoided the consequences to himself by the defendant's negligence, he was not entitled to recover." For the failure to give this principle distinctly in charge, this court reversed the judgment, distinguishing this from the case cited, by showing that the law as there laid down was applicable to cases of injury to property, and not to personal injuries; thus ruling that this latter was a sufficient independent defence, if made out by the proof, to the action.

In *Southwestern Railroad Company vs. Johnson*, 60 *Ga.*, 667, Warner, C. J., in delivering the opinion of the

court said: "The next ground of error is that the verdict is contrary to law. It appears from the evidence in the record that the husband of the plaintiff, at the time he was killed, was lying upon the defendant's railroad track where the public road crossed the same. In this class of physical injuries, the 2972d section of the Code declares that if the plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained. In the case of the *Macon and Western Railroad Company vs. Johnson*, 38 *Ga.*, 409, an action was brought by the widow of Johnson, to recover damages for the homicide of her husband, under the provisions of the 2971st section of the Code. This court held, in that case, that if Johnson could, by ordinary care, have avoided the injury to himself caused by the defendant's negligence, the plaintiff could not recover at all. See also, *Hendricks vs. Western & Atlantic Railroad*, 52 *Ga.*, 467; 53 *Ib.*, 12. The plaintiff's husband in this case, according to the evidence, could, by ordinary care, have avoided the consequences to himself caused by the defendant's negligence, assuming that the defendant was negligent in not blowing its whistle at the proper time, at the crossing of the public road, and checking up its train of cars." In the *Central Railroad & Banking Company vs. Griffin*, 42 *Ga.*, 327, 330, this court set aside a verdict for the plaintiff because it was against law, upon the sole ground that it appeared from the evidence that he could, by the exercise of ordinary care, have avoided the injury to himself, caused by the defendant's negligence, if negligent it had been. Although the court sympathized deeply with the plaintiff in his misfortune, yet they could not make the statute a nullity in furtherance of their feelings. McCay, J., who delivered the opinion, after reviewing and affirming the *Macon & Western Railroad vs. Johnson*, 38 *Ga.*, 433, and

after defining ordinary care, according to the Code, as that care and diligence wh'ch a prudent man exercises in his affairs, said : "Can it be for a moment contended that the act of the plaintiff, in attempting to crawl under the cars, only temporarily stopped, as he knew they were, was the act of a prudent man ?   It was, in fact, a most imprudent and rash act, and if section 2921 (2972 of the present Code) is to have any force at all, we think the case comes clearly under it.·  By the common law, if the plaintiff contributed at all, by his negligence, to the injury, he could not recover.   Our law does not go as far as this.  He must be guilty of want of ordinary care, in order to lose his right to recover.   If he be negligent, but the negligence does not amount to want of ordinary care, then if the railroad company be also negligent, the jury shall apportion the damages according to the negligence of both parties.   We place this case on the ground that the attempt to crawl under the cars showed a want of ordinary care, so as to bring the plaintiff within §2921 of the Code" of 1868, §2972 of the present Code.

Tried by these rules how stands the case at bar?   Did the husband of the plaintiff act with that care and diligence which a prudent man exercises in his affairs, in going on the defendant's track, at a point abounding in perils to any one who happened to meet a locomotive and train coming in either direction, at a time of day when he knew, or ought to have known, that the fast mail train would pass at a high rate of speed?   Was it not most rash and imprudent not to go to one side of the embankment out of the way of the train, when he heard and saw it coming, instead of getting on the trestle and attempting to reach the bridge, when it was so near him ?   Would not the most ordinary prudence and the slightest reflection have dictated to one in possession of his faculties the indispensable necessity of making good his retreat when the way was open, and before the danger became so imminent ?

There can be no doubt as to the existence and availa-

bility of this particular defence, and the only question raised is as to the extent it may be carried. It is founded on a general rule, which, like most others, is not so stern and inflexible as to admit of no exception or limitation in its enforcement. The protection afforded by this defence does not release the party complained of from all obligation to observe such reasonable care to avoid the infliction of injury as the circumstances in which he is placed will admit of. In this case, for example, the plaintiff's husband at the time of the injury, was a trespasser upon the railroad track of the defendant. Such intrusions were, at an early period after railroads came into existence in this state, made indictable offences, punishable on conviction by fine or imprisonment, or both, at the discretion of the court, and this was done because of the injury that might result from the trespass to passengers traveling on the cars over the road, as is stated in the statute. Act 25th December, 1837, Cobb, N. Dig., 850.

This provision, with unimportant modifications, has since been upon the statute book, and is now the law of Georgia. Code, §4437. We are quite certain that, as railroad companies are, as they should be, held to strict accountability for the performance of their duties to their patrons, servants and the public, they are entitled not only to a clear track, but to the unobstructed use of all the means indispensable to the discharge of such an important trust. And while we do not hold that the company is under the same obligations to a trespasser on its track as it would be to passengers, or employés, or other persons having business with it, and whose presence there is authorized, or even to persons who were there by its consent as a favor or gratuity, still, we cannot go so far as to say that one who places himself in a position of danger upon its way, even in violation of the statute, becomes an outlaw, and thereby forfeits all right to have its agents regard his personal security, or even his life, and to exempt it from liability for the injury,

v 71-29

if by the exercise of proper precaution on its part, the casualty could have been avoided.

If the plaintiff's husband in this case had appeared upon the track in a helpless condition and the engineer and his assistants had discovered him in time to have stopped the train before reaching him, and had recklessly or even incautiously neglected so to do, then the company would have been liable to damages, in proportion to its own default and that of the other party.

It is insisted here that this case is all-fours with the case of the *Central R. R. Co. vs. Brinson*, determined at the last term of this court and not yet published.[*]  But we see an important difference in the cases. In that, the plaintiff, with many others, had, for a long time, been in the habit of using the track as a footpath, with the knowledge of the company. In this, just the reverse was proved to have been the case. No one except the bridge hands used the track in such a way, and it was impossible for those having charge of the train to anticipate that any other than one of these, who understood how to get out of the way of the train, whenever approached by it, was upon the track. The deceased, when discovered first, was on the embankment between the swamp and bridge trestle. He was a hundred yards from the latter. It would not take the train, at the speed it was going, more than a minute to reach the bridge, for which he seems to have been making his way ahead of it. He showed no symptoms of helplessness from drink or any other cause, that could have been perceptible to the men in charge of the engine. They had a right to presume that he heard the whistle repeatedly blown, as it seems, and also the noise of the running train, and that he would get out of its way before reaching the bridge trestle, and in acting upon this reasonable presumption, they were guilty of no wrong to the deceased; they violated none of his rights, and manifested neither indifference nor carelessness as to any possible injury that

[*] See 70 *Ga.*, 207.

might befall him. *Sims vs. Macon & Western R. R. Co.*, 28 *Ga.*, 96, 97. But when this presumption ceased to operate, and the party was in a position of extreme danger, from which he could not recede, and the engineer, by the use of the appliances at his command, could have stopped the train and prevented the injury, and negligently failed, or refused to do it, then the company would have been liable in a suit for damages. The court should have charged the jury as requested in writing by defendant's counsel, that if, "when deceased went on the bridge trestle, the train was so near him that the engineer, by the exercise of all reasonable care and diligence, could not have stopped it in time to prevent it from striking him, the plaintiff could not recover."

The defence insisted that the company was protected from a recovery in the case, because

1st. Its agents, at the time of the occurrence, were in the exercise of all reasonable care and diligence.

2d. Because the injury resulted from the negligence of plaintiff's husband; and

3d. That, by the use of ordinary care, he could have prevented the consequences to himself, etc.

We think the defence upon each of these grounds was complete. The case made was a strong one for the defendant, and there was no foundation for the verdict to rest on, except the statutory presumption against the railroad company and its agents, which was entirely rebutted and overthrown by the uncontradicted evidence in the case. From this it follows that the verdict was contrary to law, and without evidence to sustain it.

When heard again, the principles set forth in this opinion, as applicable to the case, will doubtless furnish a guide to the principles to be given in charge to the jury; and the errors complained of in the several charges excepted to in the grounds of the motion for a new trial will be corrected by conforming to the directions herein laid down. The Code and the various decisions of this court

upon such of its sections as are applicable, contains, in language plain, clear and forcible, the law which must govern this case.

Judgment reversed.

JACKSON, Chief Justice, concurring.

I concur in the grant of a new trial, and I do not know that there is much material difference, in the important principles discussed by my learned associate, between him and myself. Lest there should be some misunderstanding and misconstruction, however, of what he has written, I deem a word or two of explanation necessary; and in the views now suggested I have the concurrence of my other colleague, Judge Blandford.

1. I do not think that there is any Procrustean rule in the mode of estimating the value of a life. The age of a man, the health he enjoys, the money he is making by his labor, his habits, are data from which the jury may argue how long he will probably live and work, and what his life is worth to his wife in its pecuniary value. I know of no law which requires tables of the probable length of life and its probable worth to be introduced. They may be a useful circumstance, but are not conclusive or absolutely essential.

2. I think section 2972 of the Code must be construed in connection with those sections which relate to damages caused by his own negligence alone, and by his contributory negligence. It gives another defence to the defendant corporation, and that defence is to show that after the negligence of defendant, if the plaintiff could avoid the damage by " ordinary care," he must do so, or cannot recover.

The section reads thus: " If the plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." Code, §2972. The meaning is clear, as held by

SEPTEMBER TERM, 1883.                447

The Savannah, Florida and Western Railway vs. Stewart.

this court in 56 *Ga.*, 540, that where defendant has by its negligence brought impending danger on plaintiff, he must get out of the way, if he can by ordinary care avoid the consequences of that danger to himself. In that case Judge Bleckley says: " It (section 2972) applies in terms to personal injuries, and if its meaning can be extended to injuries affecting property, it would seem to be applicable only where the plaintiff's duty is to act after the defendant's negligence has commenced and become apparent. When the consequences of a present or antecedent negligence are impending, whoever can shun them by ordinary care, and fails to do so, ought not, perhaps, to be heard to complain of them, whether they touch his person or his property."

It is true that in that case property alone was involved, but the construction is applied to persons as well as property. I know of no case wherein this construction has been reviewed and reversed in terms. There may be *dicta* of other judges in our reports which confound section 2972 with section 3034, which enacts that " no person shall recover damages from a railroad company for injury to himself or his property where the same is done by his consent or is caused by his own negligence." But the two sections ought not to be construed as the same, but in *pari materia* as separate defences.

Where one causes the injury by going where he had no excuse to go, as one of ordinary sense, as under a car in motion, or consents to it by lying down deliberately on the track and being run over, and in such cases as these, section 3034 applies, because his consent or his own negligence was the sole cause of the injury to his person. But where one is on a track, walking along, though a trespasser in one sense of the word, yet entitled to protection as a human being, and a train of cars comes rushing on towards him out of time, and the danger is impending, but by ordinary care he can step off and save himself from the consequences of the negligence of the conductor in

running out of time, then section 2972 applies; and if he does not step off, he cannot recover.

It must be borne in mind that both the principles of defence in sections 2972 and in 3034 are qualified in the sections respectively. The qualification in §2972 is this: " But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained;" and the qualification in §3034 is: " If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him." Both ·contain the doctrine of contributory negligence and the effect of it. That effect is more plainly marked in §3034 than in §2972; yet is seen in each. In §3034 the meaning is that where the negligence of the complainant is the sole cause,· he cannot recover at all; if it be in part the cause, and negligence of the company in part the cause—then he may recover in part. In §2972 the meaning is substantially the same, as applicable to the danger impending. Though the plaintiff may have contributed in some way to the peril impending—" the injury sustained" by him in consequence of it,—yet he may recover, if he could not, by ordinary care, have got out of the peril and escaped the injury. Recover what? And the company "relieved" to what extent ? Certainly to the extent of plaintiff's contributory blame the company is relieved, and the plaintiff may recover damages less the just apportionment or proportion of his own contributory fault.

Such, I think, is the clear meaning of these two sections, construed so ·that " *res magis valeat quam pereat*"—that both may stand, and neither die. It is a fair and just construction to the railroad, and to human beings who meet with casualties, where sometimes the one is wholly at fault, and sometimes the other wholly at fault, and where some· times each is at fault. Our legislators, in my judgment, have wisely made both these sections, and the construc-

tion here put upon them is that alone by which both can stand. Judge Bleckley and myself reached it years ago, in the *Georgia Railroad Company vs. Neely*, as inti mated in that case, and I have seen no reason since to depart from it.

To apply the principle to the case at bar, the presumption is against the company. Section 3033. To rebut it, it may prove that this plaintiff's conduct in putting himself in a place where he could not escape on that trestle, wilfully or carelessly, was the sole cause that he was killed; or it may prove that when the emergency was upon him, when on the trestle, and the cars were negligently coming upon him, he could by ordinary care have got off and avoided the consequences, and did not. If it fail to prove one or the other, then the wife can recover, but the damages should be diminished in proportion to the fault and negligence of her husband.

3. In my concurring opinion in the *Brinson* case, last term, I said to the effect that railroad companies were liable for want of all ordinary care and diligence in all cases in general; to extraordinary care in the case of passengers and others under their care. Section 3033 of the Code makes that the rule applicable to all cases other than passengers, etc., and the rule in respect to them is found in all our own reports, and all others, I believe, in England and America. This company was bound to that care in this case, to be measured by all the circumstances of the case. What would be all ordinary and reasonable care in one case might not be in another. The circumstances of each must measure each; but it must amount to all ordinary and reasonable care suited to each case—especially where life is involved.

4. Sections 4437 and 4438 of the Code have no application, I think, to this or similar cases. It is hardly unlawful intruding, in the sense of that statute, merely to walk on the track. The section is codified from the act of 1837. Cobb's Dig., p. 850. Any one who will read that act will see that

it was intended to punish persons interfering with these roads by " placing obstructions upon, or moving, touching or altering the gates, rails, switches, or other appendages of said roads," or " in any manner interfering with such roads or their appurtenances," evidently meaning interfering in any manner like the above. It was not meant to indict and punish for misdemeanor everybody that walked along quietly on a railroad;—but those, at farthest, who persisted in intruding upon the track, in defiance of the command of the superintendent, or other officer of the road in command at the time, to get off and keep off.

5. I have nothing to say as to what the jury should find on the next trial, and must not be understood as intimating an opinion either for or against the plaintiff.

Thus much I have written explanatory of my own views on the important topics discussed with his usual ability and learning by my colleague.

I concur in the grant of the new trial, because I think the charge probably confused the jury, and justice demanded a new trial.

BLANDFORD, Justice, announced that his views coincided with those expressed in the concurring opinion of JACKSON, Chief Justice, but he furnished no written opinion.