20697. WESTERN AND ATLANTIC RAILROAD *v.* GROOVER.

DECIDED OCTOBER 7, 1930.

*Morris, Hawkins & Wallace,* for plaintiff in error.

*Hewlett & Dennis, L. W. Camp, L. M. Blair,* contra.

LUKE, J. Claud Groover brought an action against the Western & Atlantic Railroad to recover damages for injuries alleged to have been inflicted upon him in a collision between his automobile

and the defendant's southbound train at a public crossing in the City of Marietta. The jury returned a verdict for the plaintiff for $12,500. An exception to the judgment overruling defendant's motion for a new trial brought the case to this court. The only other matter presented for decision by the record is whether or not the court erred in overruling the demurrer to the petition.

1. Omitting its formal allegations and some of the allegations that are not necessary to a decision of this case, the petition as amended sets out substantially this case:

3, 4, 5. Defendant's railroad runs through the City of Marietta in a northerly and southerly direction, and Mills street, which is a public thoroughfare, intersects said railroad at right angles at a grade-crossing which is much used, especially at about 6:40 p. m.

6. The eastern corner of said intersection is occupied by a brick building which completely shuts off the view north from one traveling westwardly along said street.

7. Just east of the defendant's main line, there is a side-track running to the northward of said crossing and over the same in a southerly direction, and, on the occasion herein referred to, said side-track was occupied by a large number of box-cars which extended from said crossing in a northerly direction, the exact number of which petitioner does not know.

8. "Said box-cars shut off the view of any one passing over said crossing and traveling in a westerly direction, so as to conceal anything that might be approaching from the north."

9. At 6:40 o'clock p. m. on March 13, 1929, petitioner was driving an automobile in a westerly direction along Mills street, a public street of Marietta of the approximate width of 38 feet from curb to curb.

10. "Arriving at the eastern side-track of defendant on which said box-cars were situated, your petitioner stopped his automobile, looked, and listened, but saw no approaching train, nor did he hear the noise of same."

11. "Thereupon he started forward in a cautious manner, driving at a rate of speed of approximately six or eight miles per hour, looking both to the right and to the left for approaching trains."

12. "He saw none, and when he came upon the main line of defendant, upon looking to his right, he for the first time saw an

approaching train in the darkness, the automobile at that time being about three feet north of the centre of said crossing."

13. "It was dark, misty, and raining, and the light from said engine was obscured by the rain, the dirt, and the grease on the glass front of same, so that the rays from said headlight did not illumine the tracks."

14. "When petitioner first observed said train it was approximately sixty feet north of the crossing, and he immediately attempted to speed up his car, he already then being upon the main line, so that he might avoid being struck, but he was unable to get his automobile completely off the track, and the rear end of same was stricken by the approaching locomotive and cars."

15. "Said engine and train was then and there being driven at the great, rapid, and reckless rate of speed of approximately fifty miles per hour."

16. An ordinance of the City of Marietta prohibited trains from running at a greater rate of speed than ten miles per hour in said city, and fixed penalties that should be inflicted upon conductors or engineers violating it.

17. As said engine and train approached said grade-crossing, the engineer and fireman thereof failed to toll the bell, which is a violation of the State law.

18. At said time said engineer failed to keep a lookout along said track, which is a violation of the State law.

19. "As said train approached said grade-crossing and passed over same the engineer failed to check the speed of his train and to have same under control, notwithstanding said locality was in a much congested and populous community, and the engineer should have anticipated the presence of persons on said crossing, and in the exercise of ordinary care he should have reduced the speed of his train in approaching and crossing over same."

20. "Said engine and train, after striking the automobile in which your petitioner was riding, ran a distance of more than five hundred feet with its emergency brakes on."

21. "Upon approaching said grade-crossing the engineer failed to give your petitioner any warning of his approach by bell, gong, whistle, or otherwise."

22. "The automobile of petitioner was hurled forward and to

the right of said engine and train and against a standing box-car on an adjacent track just west of the main line and on the southern part of the crossing, which box-car was extending twelve or fifteen feet into and upon said Mills street as the same crosses the railroad-tracks."

23. "The automobile which your petitioner was driving, but for the presence of said box-car in said street, which was distant from said automobile at the time that it was stricken approximately twelve feet, would have been thrown entirely clear of the main line and the approaching train, and your petitioner would have escaped with but minor injuries."

25. "Your petitioner was caught and imprisoned in the wreckage of his automobile when the same struck said box-car, and the train on the main line was engaged with said wreckage at the time that same was brought to a stop. Each and all of the parts of the body and the top and the steering-gear of the automobile were mashed in and upon the body, the legs, the arms, and the head of your petitioner, so that he could not extricate himself therefrom."

26. "At said time petitioner received a blow over his left eye, and the same was lacerated, and all of the nerves, muscles, ligaments, skin and tissues thereabouts were mashed, bruised and contused, and the skull was fractured and broken, but nevertheless he was conscious and he appreciated his surroundings."

27. "At the time said train stopped, the train crew, whose names are unknown, came to the place where your petitioner was lying imprisoned in said wreckage, and your petitioner begged said train crew to extricate him and not to move the train until he was extricated."

28. "Nevertheless, the train crew gave a signal to the engineer to back, and when said train commenced to move backward, your petitioner begged and cried out to said train crew, asking them not to do so, because your petitioner anticipated further injury if the wreckage were disturbed by the movement of the train coaches which had engaged same."

29. "Notwithstanding said protestations, the train continued to back, and the wreckage of the automobile engaging your petitioner was caused to be moved approximately five or six feet, and the parts of same were mashed and crushed, and the same were

thus caused to crush your petitioner and to further injure him in the particulars hereinafter set forth." By amendment the following clause was inserted in this paragraph after the word "crushed," which is the last word of the phrase, "and the parts of same were mashed and crushed;" "That is, the parts of the automobile, consisting of the top, the body and the steering-wheel, which imprisoned petitioner, were caused to be twisted and moved downward, the exact distance of which he can not give."

30. "That in the exercise of ordinary care defendant should not have moved the train without first removing petitioner from the wreckage of his car."

31. "That if defendant had removed petitioner from the wreckage of said automobile before backing its train, which was moved approximately two car-lengths, he would have received no injury other than the injury to his head over his eye."

32. The pleader here, after alleging designated injuries to petitioner's head, further sets out numerous and severe injuries to various other parts of his body, and avers that petitioner received a severe shock to his entire nervous system and suffered great mental and physical pain, and that all his injuries were permanent.

33. Petitioner was a strong, able-bodied man, twenty-one years old, earning and capable of earning $3 per day, and as he grew more experienced in his line of work, which was plastering, would have earned more. He has been completely disabled since his said injuries, and will be for a long time to come, the exact duration of which he can not give.

34. Petitioner has been compelled to expend in the treatment of his said injuries $250 for doctor's bills and $30 for x-rays to doctors Allen and Ridley, all of which was reasonable and necessary in the premises.

35. "Petitioner brings this suit for pain and suffering, permanent injury, and permanent impairment of ability to labor and earn money, together with medical expenses incurred."

36. "At said time petitioner was free from fault, was in the exercise of ordinary care, and his injuries were directly and proximately caused by the negligence of the defendant in the particulars hereinafter set forth."

37. Defendant was negligent as follows: (a) "In running

its train at the great, rapid, and reckless rate of speed aforesaid, having in view the character of the locality and the use of the highway." . (*b*) In running its train in violation of said city ordinance. (*c*) "In failing to give petitioner any warning by bell, which is a violation of state law." (*d*) "In failing to give petitioner any warning by whistle, gong, or other signal." (*e*) "In failing to check the speed of said engine and train as the same approached said public crossing at a time and place where the presence of others ought to have been anticipated." (*f*) "In failing, through its engineer, to keep a strict lookout ahead, which is a violation of state law." (*g*) "In placing a box-car in the public crossing as aforesaid, thereby obstructing the highway." (*h*) "In backing said train at a time when petitioner was imprisoned in the wreckage of his automobile, which was engaged by the box-car on the one side and the train of defendant on the other." (*i*) "In failing to extricate your petitioner from the wreckage of said automobile before moving the train which engaged said wreckage."

In their brief, counsel for plaintiff in error admit that the first four paragraphs of their demurrer were met by the amendments to the petition, but insist upon the remaining grounds, to wit, 5, 6, 7, and 8.

Paragraphs 30 and 31 of the petition have already been set out fully, and need not be repeated here. The ground of demurrer to each of them is that the allegations contained therein "are mere conclusions of the pleader without sufficient facts being set forth in said paragraph or elsewhere in the petition to authorize the same."

Subparagraphs (*h*) and (*i*) of paragraph 37 of the petition have likewise been hereinbefore fully set out. The grounds of demurrer to these two subsections are identical, and are as follows, to wit: "(*a*) Said allegations are mere conclusions of the pleader without sufficient facts being set forth therein or elsewhere in the petition to support the same as a charge of negligence against this defendant, and, for this reason, should be stricken. (*b*) The said allegations, either standing alone, or taken in connection with the other allegations of this petition, are insufficient to show any actionable negligence on the part of this defendant. (*c*) Said allegations are insufficient to charge this defendant

with actionable negligence, for the reason that it does not appear from said paragraph, or from the petition as a whole, that in backing the said train this defendant breached or violated any duty which it owed petitioner at the time."

According to the allegations of the petition, the petitioner was, by reason of the negligence of the defendant, placed in an extremely dangerous situation, from which he could not extricate himself. In these circumstances the defendant owed the petitioner the duty of exercising ordinary care in extricating him from the wreckage of his automobile. The manner in which the automobile was engaged by the defendant's box-car and its train is pleaded. The way in which the petitioner was held helpless in the wreckage of his automobile is set out rather fully. The backing of the defendant's train, over petitioner's protests, with the resultant injuries to him, is pleaded. Having set out fully the parts of the amended petition pertinent to the questions at issue, we shall refrain from detailed repetition, and content ourselves with holding that the trial judge did not err in overruling any ground of the demurrer.

Before passing on the special and general grounds of the motion for a new trial, we deem it proper to set out the substance of the defendant's answer and some of the evidence in the case. After denying practically all the material allegations of the petition, the defendant pleaded that the plaintiff was not entitled to recover, for the following reasons:

"(a) Because the plaintiff's injuries, if any he sustained, were the result of his own negligence. (b) Because, by the exercise of ordinary care for his own safety on the occasion in question, the plaintiff could have avoided any injury to himself. (c) Because, even though it should appear upon a trial that this defendant upon the occasion in question was negligent in any particular as alleged in the plaintiff's petition, the negligence of the plaintiff himself on said occasion was equal to or exceeded any negligence on the part of the defendant, and, therefore, the plaintiff is not entitled to recover."

Mills street, running in an easterly and westerly direction, intersects the railroad at right angles in the City of Marietta. Its width from curb to curb is thirty-eight feet and two inches, and the width of its northern sidewalk is ten feet and eleven inches. In the northeast corner of the intersection of Mills street with the

railroad is a warehouse, which is thirty-four feet east of the main line of the railroad. Just west of said building is a spur-track, the centre of which is nine feet west of the warehouse. This spur-track ends near the north edge of the sidewalk and does not cross the street. On this spur-track was standing a box-car, the end of which was practically on a line with the front of the warehouse. Immediately west of the spur-track was another track which did cross the street, and immediately west of this second track was the main line of the railroad. These tracks are practically parallel. The spur-track is approximately twelve feet from the second track, and the latter is about twelve feet from the main track. The main track is straight for about twelve or fifteen hundred feet above said crossing. The plaintiff testified that he did not see any box-cars to his right on the middle track, but P. M. Groover swore that he did see box-cars on said track about fifty or sixty feet above the crossing, and another witness testified that he saw a box-car standing about fifty feet up the track. What has been stated has reference to the night of March 13, 1929.

At about 6:40 o'clock on said night the plaintiff, accompanied by Hoke Allgood, drove his open Buick roadster in a westerly direction down the right side of Mills street towards said crossing. He stopped his car within about thirty-five or forty steps of the railroad and talked to an acquaintance. He then proceeded towards the crossing at about six or seven miles an hour. As he proceeded he looked and listened but did not hear or see anything. He crossed the first track, crossing the street in safety, and had driven his car on the main line when for the first time he saw a train on that track about fifty or sixty feet distant, approaching him at about thirty-five or forty miles an hour. He speeded up his engine in order to get over the track, but the train struck his automobile in the rear and hurled it against a box-car standing on a track adjacent to and just west of the main line. When the train stopped, the plaintiff's automobile was pinned tightly between the box-car and the train, and the plaintiff was pressed against the ground by his automobile. When the train was moved backward, apparently to disengage the automobile, there was a distinct scraping noise as though the automobile were being torn loose or crushed. Plaintiff received severe injuries by reason of the backing of the train, in addition to injuries he had already received. Many of plaintiff's

injuries were serious, and, in the opinion of physicians, some of them were permanent. There was evidence as to plaintiff's earning capacity, and as to a probable increase in it. Counsel admitted that plaintiff had to expend $280 for reasonable and necessary doctor's bills and x-ray treatment. Will Clackum testified that after he heard the "crash" of the collision, he "saw the sparks flying from the contact of the wheels with the rails."

The first two grounds of the amendment to the motion for a new trial merely specify and elaborate alleged reasons why the evidence does not support the verdict. They will be considered later with the general grounds.

2. Special ground 3 complains of an excerpt from the charge of the court wherein, after instructing the jury upon the law requiring that the bell of an engine approaching a public crossing in a city must be tolled, the court further charged as follows: "And if the engineer or other employee on this occasion failed to comply with the terms of this law to which I have called your attention, that would constitute negligence per se; that is, it would be negligence as a matter of law. . . So if you believe these witnesses who testified that no bell was rung upon the occasion under investigation, the plaintiff has a right to recover, unless otherwise debarred under the principles of law which will hereinafter be given to you." It is insisted that the charge was error because it expressed the court's opinion as to what had been proved, and because no witness had sworn that the bell did not ring. Several witnesses who were in a position to hear the bell if it had rung testified that they did not hear it ring. This testimony was not directly denied by any witness, and the defendant introduced no testimony. Of course, a fact may be established by negative as well as positive testimony. We do not think that the jury could have been misled by the charge into concluding that the court meant to say that there was positive testimony that the bell did not ring. This ground discloses no reversible error.

3. It appears from special ground 4 that after charging the jury that the blow-post law did not apply to cities, the court charged precisely as we have indicated in the excerpt complained of in the previous ground. It is inconceivable to us that the jury could have been led to conclude from that part of the charge of the court, or from that part taken in connection with any other part of the court's

instructions, that the blow-post law had any application to cities, when the court specifically instructed the jury that it had not. This ground discloses no reversible error.

4. Special ground 5 alleges that the following excerpt from the charge of the court is erroneous: "No person can complain of negligence unless such person suffers damage or injury as a result thereof. So if you should find that in any particular there was negligence on the part of the defendant and its servants, and yet you find that such negligence, if it existed, did not proximately contribute to the injuries of the plaintiff, that particular negligence, if you find such, could not be considered by you as authorizing the plaintiff to recover. In other words, to entitle the plaintiff to recover, there must be negligence in some one or all of the particulars charged, and such negligence, if it existed, must have contributed proximately to the causing of his injury." It is insisted that this excerpt is error because the court assumed that the plaintiff had been injured, thereby expressing to the jury his opinion to that effect. The court had already charged as follows: "If you believe there was no negligence in any of the particulars charged, there would be no liability, and the plaintiff could not recover. On the other hand, if you believe there was negligence in any of the particulars charged by the plaintiff, your next inquiry would be whether such negligence as you find to exist, if you find that any existed, was the cause of the injuries to plaintiff, if you find he was injured." This quoted matter immediately preceded the charge complained of. The court had also fully stated the contentions of the parties, and had told the jury that the effect of the answer was to put the burden of proof on the plaintiff to show by a preponderance of the evidence that the allegations made in the petition were true. Considering the excerpt complained of in connection with other parts of the charge, we are satisfied that it is not subject to the criticisms made of it. Furthermore, witness after witness testified to the effect that plaintiff was injured, no witness testified that he was not, and the defendant introduced no evidence. "Where a fact is established by undisputed evidence, it is not error for the judge, in his charge to the jury, to assume or intimate that the fact has been proved." *Jones* v. *Wall,* 22 *Ga. App.* 513 (2) (96 S. E. 344), citing *Dexter Banking Co.* v. *McCook,* 7 *Ga. App.* 436

(67 S. E. 113), and *Ga., Fla. & Ala. Ry. Co.* v. *Jernigan,* 128 *Ga.* 501 (57 S. E. 791). This ground is not meritorious.

5. Special ground 6 complains of a long quotation from various parts of the charge. It is alleged that the charge was not adjusted to the evidence because the evidence did not show that the plaintiff received any injury from the backing of said train. It is also insisted that the evidence shows that plaintiff's automobile was caught between said train and said box-car by reason of plaintiff's own negligence, and that the only duty the defendant owed the plaintiff in extricating him from the wreckage of his automobile was not to injure him wilfully and wantonly. Plaintiff testified : "In the backing movement of the train the car crushed down on me. . . It was making a crushing noise. . . I know I was lying close to the ground." C. J. Weaver testified that plaintiff "was pinned in that wreckage." Lynn Clackum swore that when the train backed it hit the running-board of the automobile and "made a terrific racket," and that "those boys were lying on the ground underneath the wreckage." According to the evidence, the train in backing moved at least half a car-length. The plaintiff swore that his stomach "was crushed in." Physicians testified that plaintiff's vertebrae were twisted and his spine bent, that his abdomen was injured, that his head was hurt, and that he was injured in various other ways. Under the record in this case the question as to when and how plaintiff was injured was for the determination of the jury. The court charged the jury that the law required the plaintiff to exercise ordinary care to protect himself, and that if they found that his negligence was equal to or greater than the negligence of the defendant he could not recover. We do not think that this ground of the motion for a new trial is meritorious for any reason assigned.

6. In ground 7 the plaintiff in error avers that the court erred in failing to charge the contentions raised by its answer that if the collision was the result of plaintiff's own negligence, or the result of plaintiff's failure to exercise ordinary care for his own safety, and through no negligence of the defendant or its employees, then the defendant owed the plaintiff no duty to extricate him from the wreckage of his automobile, except not to injure him wilfully and wantonly. After clearly stating to the jury the contentions of the parties, and that these contentions would be found in the plead-

ings, the court instructed the jury that the plaintiff was bound to exercise ordinary care to protect himself, and that if plaintiff's negligence equalled or exceeded the negligence of the defendant he could not recover. The court also told the jury that if they believed the defendant was negligent in any of the ways set out in the petition, their next inquiry would be as to whether or not such negligence caused plaintiff's injuries, and that no person could complain of negligence unless it resulted in injury or damage. The court further charged that if, by the exercise of ordinary care, plaintiff could have avoided the consequences to himself of defendant's negligence after it was known to him or in the exercise of ordinary care could have been known to him, he could not recover. This ground is very similar to the latter part of ground 6. There was no request to charge, and, in the light of the charge as a whole, we are satisfied that this ground discloses no reason why the judgment should be reversed.

7. Special ground 8 avers that the court erred in submitting to the jury the question of plaintiff's recovering for his alleged inability to earn money in the future, for the reason that there was no evidence showing his life-expectancy, and no evidence as to the method of reducing sums due for future periods to their present cash value. Special ground 9 is similar to the foregoing ground. It is that the court erred in refusing to charge as follows: "The plaintiff having failed to introduce any proof as to the life-expectancy of the plaintiff, and having failed to make any proof of the present value of money due over future periods, the plaintiff has failed to prove a condition precedent to the recovery of any damages for the alleged diminution of his earning capacity in the future, and you will not consider that element of his claim for damages, for any verdict which you might attempt to render therefor would be based upon a mere guess, and that would not be due process of law." In each of the two grounds under consideration it is also insisted that the defendant was not given due process of law.

The plaintiff testified that before he was injured he never had any trouble with his back and abdomen, and that at the time he was hurt he was twenty-one years old and was earning $3 a day. There was further evidence to show his earning capacity, and testimony from which it could be fairly concluded that it would increase.

We are aware of the rule laid down in *S., F. & W. Ry. Co.* v. *Stewart,* 71 *Ga.* 427, that there can be no recovery for the future earnings of the person injured unless there is evidence of his life-expectancy. However; "where the age of the person in question is shown, expectancy of life may be determined by the jury without having the mortality tables before them, or without any other direct evidence on the subject." *A. C. L. R. Co.* v. *Moore,* 8 *Ga App.* 185 (3) (68 S. E. 875). Therefore, the plaintiff having introduced evidence that would warrant the jury in reaching a conclusion as to his life-expectancy, grounds 8 and 9 of the motion for a new trial are not meritorious. Of course the requested charge, which told the jury pointedly that plaintiff had failed to introduce evidence as to his life-expectancy, could not properly have been submitted to the jury.

8. It is insisted in the last special ground, numbered 10, that the verdict was excessive. In this regard, suffice it to say that there was evidence to show that the plaintiff was seriously and permanently injured, that his capacity to work was diminished one half, and that he suffered greatly and was suffering up to the time of the trial. Therefore we can not say that the verdict for $12,500 was excessive.

9. We shall now discuss the general grounds of the motion for a new trial, and, in connection with them, the first two grounds in the amendment to the motion for a new trial, which are merely elaborations of the former. It is insisted that the verdict should not stand because the plaintiff's alleged injuries were the result of his own negligence, and because, even if defendant was negligent, the evidence showed that by exercising ordinary care he could have apprehended and avoided the approaching train. It is also contended that the evidence fails to show that plaintiff's injuries were caused by the operation of any train belonging to the defendant, or by the negligence of any employee or agent of defendant. Much stress is laid upon the fact that the plaintiff testified as follows: "Before a man driving an automobile, when he gets to the east rail of that first track crossing Mills street, in the direction in which I was going, he can see twelve or fifteen hundred feet north of the crossing after you pass that first box-car. When you get to the east rail of the first track that crosses Mills street, if you looked, you could see twelve or fifteen hundred feet up the track."

We do not think that it can be reasonably concluded that the plaintiff meant to apply the foregoing testimony, which was given on cross-examination, to the time and occasion in question. It is true that he swore that his sight was good and his brakes working, and that he was driving six or seven miles an hour and could have stopped his car within three or four feet. But he testified also that the night was dark and rainy, that the headlight of the engine was dim, and that, though he looked, he did not see the engine until it was almost upon him. It is also true that he swore that he did not see any cars to his right on the first track he crossed, but other witnesses did. Plaintiff's testimony about a person's being able to see twelve or fifteen hundred feet north of the crossing appears to have been a hypothetical answer to a hypothetical question, and the jury must have so considered it. We can not say that they had not the right to do so.

Under the rule invoked by the plaintiff in error, the jury were not bound to discredit the plaintiff's testimony. This rule is found in *L. & N. R. Co.* v. *Lusk*, 37 *Ga. App.* 99 (139 S. E. 89), and is in this language: "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal. And unless there be other evidence tending to establish his right to recover, he is not entitled to a finding in his favor, if that version of his testimony the most favorable to him shows that the verdict should be against him."

It is also insisted that a new trial should be granted because the evidence fails to show that plaintiff's injuries "were caused by the operation of any train belonging to or operated by the defendant, as alleged in the petition," or that such injuries "were caused by any negligence of any employee or agent of the defendant, or that the train . . was being operated by any agent or employee of this defendant." That part of the petition which alleged that the defendant operated a line of railway through Cobb county and Marietta was admitted in the answer. Will Clakum swore: "I don't know whether that was the W. & A. train, the Dixie Flyer, or not. It was on the main line of the W. & A. Railroad down there." Esmer Ward testified: "That train was the Dixie Flyer of the N., C. & St. L. That is the W. & A. track that it came in on." We think the train was sufficiently identified.

Our conclusion is that the evidence supports the verdict, and that the court did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*