24606. EVANS *v.* CALDWELL.

DECIDED JANUARY 31, 1936.

*W. M. Sapp, Neely, Marshall & Greene,* for plaintiffs in error.
*R. Carter Pittman, Mann & Mann,* contra.

MacIntyre, J. This action was brought by a father against a mother and minor son, who lived at home with her. The plaintiff alleged that his son, then about 18 years of age, was injured by the gross negligence of the minor defendant in operating an automobile furnished by his mother to be used about the family business, pleasure, and convenience, and which was being used by him for such purposes, with the knowlege and consent of the mother, at the time the plaintiff's son was injured. The plaintiff claimed damages for diminution of his son's earning capacity during minority, and for medical expenses incurred as the result of the injury. The defendants demurred and to the overruling of the demurrer they excepted pendente lite. They filed answers denying liability. The trial resulted in a verdict for the plaintiff for $2000. The defendants' motion for new trial was overruled, and they excepted, assigning error also on the ruling excepted to pendente lite.

1. That the petition set up a cause of action against the minor defendant for gross negligence was adjudicated in the action brought by the plaintiff's son against the same defendant. The judgments overruling the demurrer to the petition and denying a new trial in that case were affirmed by this court. *Evans* v. *Caldwell,* 45 *Ga. App.* 193 (163 S. E. 920). It was held that the evidence supported a verdict in favor of the plaintiff, and that such evidence did not show that the plaintiff was injured because of his failure to exercise due care for his own safety in continuing to ride in the automobile driven by the defendant, after discovering that the defendant might be drinking intoxicating liquor and was operating the car at an unlawful rate of speed.

In the instant case Mrs. Evans, mother of W. R. Evans, (who was a member of the family and residing therewith, and who was operating the car at the time of the wreck) testified: "I own the automobile that was in the wreck. I maintain that automobile for the pleasure and comfort of the family. . . He left home with it with my knowledge and consent. . . I let him have the car on that evening in order that he might go to the picture-show, with the understanding that he would come home immediately." The testimony further showed that the son, after the picture-show, started to a nearby community to a dance, and on the way the car was wrecked. The judge charged the jury as follows: "I charge you that under the evidence in this case, in

so far as it is without material contradiction, it appears that the automobile in question was purchased by the defendant, Mrs. Eugene Evans, for the comfort, pleasure, and convenience of herself and her family, and that the codefendant, W. R. Evans, was a member of that family, and that upon the occasion under investigation he had secured possession of the automobile from his mother and codefendant for the carrying out of one of the purposes for which the automobile had been purchased by her; and although he might not have returned the automobile at the time he had promised to do, I charge you that, as a matter of law, the evidence shows without material contradiction that he was, at the time of the occurrence of the alleged damage to the plaintiff's son, Mack Caldwell, operating the car as agent of the codefendant, Mrs. Eugene Evans, and the defendant, Mrs. Eugene Evans, would be liable in this case if the defendant, W. R. Evans, is liable."

2. The so-called "family-purpose doctrine," relative to an automobile furnished for the comfort and pleasure ("business") of the family, prevails in this State. "While the wife was not obliged to furnish the use of an automobile to the children or her family from her separate property, yet having voluntarily done so, and having permitted its use as a part of her parental duties, she was liable where the injury occurred by reason of the operation of such automobile by a member of the family in a negligent manner, where such use was for the family pleasure and comfort." *Ficklen* v. *Heichelheim,* 49 *Ga. App.* 777 (176 S. E. 540). A mother, the owner, is liable for the minor son's negligent operation of an automobile maintained for the comfort and pleasure of the family, where the minor son resided with the family and drove the automobile for his own pleasure with the expressed or implied permission of the mother. *Hubert* v. *Harpe,* 181 *Ga.* 168 (182 S. E. 167). "To make the owner of an automobile liable for his driver's negligence, it must be established that the latter was acting within the scope of his employment. In other words, the owner of a motor vehicle is liable for the acts of his chauffeur when the latter is acting within the scope of his master's business. Conversely, the owner is not liable for the conduct of the servant when the latter is not acting within the scope of his employment. While it is, of course, true that the master rarely commands the servant to be negligent, or employs him with the expectation that

he will commit a negligent or wilful tort, if the acts under consideration are done in the prosecution of the master's business, liability will ordinarily attach to the master. But if the tort of the servant is entirely disconnected from the service or business of the master, the latter is not responsible, although it may occur during the general term of the servant's employment. However, so long as the servant is acting within the scope of his employment, the owner is liable, though the negligent act was not necessary to the performance of his duties, or though it was not expressly authorized or known to the employer, or was contrary to his instructions. It is not enough, in order to establish liability, to show that the master has an interest in what is being done. It must also be made to appear that the servant whose act is in question has authority from the master to perform the class of service to which the act belongs. If the act is within the class, the master is bound, although the servant is forbidden to perform the particular act. If not within the class, the master is not bound." 7-8 Huddy's Cyclopedia of Automobile Law (9th ed.), 233, § 91.

In Philadelphia & Reading R. Co. v. Derby, 55 U. S. 468 (14 L. ed. 291), it was said: "The fact that the engineer having control of the colliding locomotive was forbidden to run on that track at that time, and had acted in disobedience of such orders, was no defense to the action. A master is liable for the tortious acts of his servant when done in the course of his employment, although they may be done in disobedience of the master's orders. . . The rule of 'respondeat superior,' or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or·neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment. See Story on Agency, § 452; Smith on Master and Servant, 152. There may be found, in some of the numerous cases reported on this subject, dicta which, when severed from the context, might seem to countenance the doctrine that the master is not liable if the act of his servant was in disobedience of his orders. But a more careful examination will show that they de-

pended on the question whether the servant, at the time he did the act complained of, was acting in the course of his employment, or, in other words, whether he was or was not at the time in the relation of servant to the defendant. . . Although, among the numerous cases on this subject, some may be found (such as the case of Lamb v. Palk, 9 C. & P. 629) in which the court has made some distinctions which are rather subtile and astute, as to when the servant may be said to be acting in the employ of his master, yet we find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment, when the particular act causing the injury was done in disregard of the general orders or special command of the master. Such a qualification of the maxim of respondeat superior would in a measure nullify it." In 39 C. J. 1285, § 1477 (f), it is said: "If the act resulting in the injury complained of was within the scope of the servant's employment, the master will be liable therefor, although the act was in violation of the master's instructions as to the method of performing the work or expressly forbidden by him, and without regard to the servant's motive. This is so because the test of the master's responsibility for the acts of his servant is not whether such act was done in accordance with the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed to do."

In Huddy's Cyclopedia, supra, 257, it is said: "If a trip is being made on the master's business, it is immaterial that the chauffeur [the son] is using the car for his pleasure also." And on p. 324 it is said: "The person upon whom it is sought to fasten liability under the 'family-car' doctrine must own, provide, or maintain an automobile for the general use, pleasure, and convenience of the family. . . In order to bring a case within this rule it must be shown that the car was in fact a family-pleasure car. But the mere fact that a car is purchased and used for business purposes does not prevent its coming within the 'family-car' doctrine, where it is also used for family pleasure." In Ryan v. Ferrell, 208 Cal. 200 (208 Pac. 945), one of the authorities cited as supporting the text, it is said: "Where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged

480

in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly, or indirectly, serving his master." In Huddy's Cyclopedia, supra, 327, it is said: "In some jurisdictions the view is taken that, when an automobile is procured for the pleasure and entertainment of the members of the family, the 'business' of the owner is the running of the machine for their purposes, and the operation of the machine by a member of the family is deemed within the scope of the owner's business,. though the operator is not taking other members of the family on such trip but is using it for the pleasure of himself and his own friends." Authorities in the following States are cited in support of the text: Colo., Conn., Ga., Iowa, Ky., Minn., Neb., New Mex., N. C., Ore., Tenn., Tex., and W. Va. "On the other hand, in some jurisdictions it is held that when a child or other member of an owner's family uses such vehicle solely for his own purposes, or for the entertainment of his own friends, the machine is not being used in the scope of the owner's business and consequently he escapes responsibility for the negligence of the driver." And even more authorities in other States, supporting the latter rule, are cited. In Western Real Estate Trustees v. Hughes, 172 Fed. 206, it is said: "A master is responsible for the tortious acts of his servants done in his business and within the scope of his employment, although he does not authorize or know of the particular act, or even if he disapproved or forbade it. Servants do not depart from the scope of their employment merely because in executing the work assigned to them they exceed or violate their instructions in respect of its detail or the manner of doing it." In Cosgrove v. Ogden, 49 N. Y., 255, 257 (10 Am. R. 361), it is said: "The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do." In Burnett v. Oechsner, 92 Tex. 588 (50 S. W. 562, 71 Am. St. R. 880), it is said: "For the mode in which the servant performs the duty he is engaged to perform, if wrongful and to the injury of another, the master is liable, although he may have expressly forbidden the particular act."

In Powell *v.* Deveney, 3 Cush. (Mass.) 300 (50 Am. D. 738), it is said: "The servant being about the business of his master, the master must be responsible for his acts, and can not exempt himself by any order he may give the servant." In McClung *v.* Deaborne, 134 Pa. 396 (19 Atl. 698, 8 L. R. A. 204, 19 Am. St. R. 708), it is said: "It was the master's duty not only to give such orders, but to see that they were obeyed. It will be seen, therefore, that it is the character of the employment, and not the private instructions given by the master to his servant, that must determine the measure of his liability in any given case." Judge Cooley says (2 Cooley on Torts (3d ed.), 1028): "It is immaterial to the master's responsibility that the servant at the time was neglecting some rules of caution which the master had prescribed, or was disregarding them in some particular, and that the injury which actually resulted is attributable to the servant's failure to observe the directions given him. In other words, it is not sufficient for the master to give proper directions; he must also see that they are obeyed. . . That they [the masters] trusted a servant who .has ventured to disobey instructions is their misfortune, but it ought not also to be the misfortune of others who had no concern in the question who should manage the company's business beyond the common concern of all the public that it should not be managed to their injury. . . The disobedience is culpable in the servant, and the master, having taken those precautions which, if observed, would have prevented the injury, is free from fault, but, nevertheless, his duty to his neighbor to so use his own as not to injure the neighbor has failed in performance, and the law leaves him to bear the consequences." In Gibson *v.* Dupree, 26 Colo. App. 324 (144 Pac. 1133), it is said: "An employe [one Nagel] of a public garage, having authority to go to an electric company to get charged batteries, is acting within the scope of his authority in so doing, though he uses against orders an automobile kept in the garage subject to the owner's call to get such batteries, instead of walking as he was supposed to do, and his employers are liable for his negligence in running down a bicycle rider." And "A master is liable for the tort of his servant committed in disobedience of his master's orders, provided such disobedience does not carry the servant entirely outside the scope of his employment. For example, if the disobedience has

relation merely to the manner in which an act, incident to the authorized functions of the servant, is performed. 6 Labatt's Mas. & Ser. (2d ed.), 6894, citing Philadelphia &c. R. Co. v. Derby, supra. It is plain from these authorities that, if the accident occurred while the employe was engaged in performing one of the duties of his employment, it would make no difference that he used the forbidden means that he did use to perform such duty, so far as the plaintiff's rights are concerned, provided his employers placed him where he could, with their implied authority, by his mere disobedience, use the forbidden means. There can be no doubt that Nagel was engaged in his master's business, and within the scope of his employment, in going after the battery and bringing it back to their place of business, and the fact that he used the automobile in the performance of such duty did not carry him outside of the scope of his employment, although the use of such means was without the authority and consent of his masters and of the owner, and against his employers' instructions. The relationship of master and servant was not thereby suspended or extinguished."

3. In the instant case the automobile was furnished by the mother, who was the owner, for the pleasure and comfort of her family. When the son, a member of the family, with the owner's consent drove the car to the picture-show, he was certainly using it in furtherance of furnishing pleasure for himself as a member of the family, and under the "family-car doctrine," or the "family-purpose doctrine," which is of force in this State, the "business" of the owner was the furnishing of pleasure to a member of the family, and when the son drove the car to the picture-show he was acting for the mother within the scope of her "business." The car was not furnished by the owner merely as an accommodation to her son with no interest or concern in the purpose for which the son was going to use it. The transaction was not a mere bailment of the car, for the son was using it in the "business" of the mother, that "business" being the furnishing of pleasure to the family of which the son was a member. *Hubert* v. *Harpe,* supra. And so far as the rights of the plaintiffs are concerned, it would make no difference that the son used the forbidden means that he did use to furnish pleasure for a member of the family; provided the mother placed the son where he could, with her implied au-

thority, by his mere disobedience use the forbidden means. Such use of the automobile did not carry him outside of the scope of his mother's business, although the use of such means was without the authority and consent of the mother and against her instructions. The relationship of master and servant was not thereby suspended or extinguished. The mother being engaged in the business of furnishing pleasure and comfort for the family, the disobedience of her son in using the automobile for such purpose, relating merely to the time and manner in which the act of going to the dance was performed, the mother is liable for the injury caused during the disobedence of her son in so using the automobile. The going to the dance was an act that belonged to the class of service which the son as a member of the family was authorized to perform, and was an act within the purpose the automobile was intended to serve; and the act of going to the dance being within the class of service authorized by the mother, and in the scope of her business with respect to the family car, she was bound, although her son was forbidden to perform the particular act of going to the dance in the family car. It seems clear to us that since the mother would have been liable for any negligent act of her son while going to and coming from the picture-show, the only difference is the son's disobedience, which does not relieve her from liability. Applying the above principles, it follows that the trial judge did not err in charging the jury as above stated. *Griffin* v. *Russell,* 144 *Ga.* 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994); *W. & A. R. Co.* v. *Groover,* 42 *Ga. App.* 200 (155 S. E. 500); *Farmer* v. *State,* 49 *Ga. App.* 323 (175 S. E. 401); 42 C. J. §§ 1087, 1088; 39 C. J. § 1285; Singer Mfg. Co. v. Rahn, 132 U. S. 518 (10 Sup. Ct. 175, 33 L. ed. 440); Blashfield Cyc. 1479; Jones v. Cook, 96 W. Va. 60 (123 S. E. 407); Duncan v. Overton, 182 N. C. 80 (108 S. E. 387).

In House v. Fry, 30 Cal. App. 157 (157 Pac. 500) it was said: "The court's finding that the automobile was being driven without the knowledge of William C. Fry [father], and contrary to his express order, is sustained by the evidence. He had sent a telephone instruction, which was communicated to his son, to wait at home for further orders, and this instruction was disobeyed. But it also appears, without conflict, that the trip was being made for a purpose within the general scope of the authority of Lawrence

Fry [son] as chauffeur for his codefendant, and for the purpose of finding William C. Fry to bring him home, as was customary with them. 'Where the servant acts within the general scope of his authority, notwithstanding the fact that he may be disregarding directions of the employer, the employer may be held liable. (1 Shearman and Redfield on Negligence, 5th ed., sec. 145 et seq.)'" The question of "deviation" or "detour" is not in this case, for the reason that at the time of the wreck the son, while disobeying instructions, was still acting within (not without) the scope of the master's "business" in furnishing pleasure to a member of the family. Nor was it error for the judge to refuse to give the requested instructions to the effect, in substance, that if the son was not using the automobile with the permission or consent of his mother at the time of the injury complained of, then the mother would not be liable for any tort committed by him in the use of the automobile at the time without her permission or consent; that if the jury believed from the evidence that at the time of the accident the son did not have his mother's consent to drive the automobile to the dance, she would not be liable to the plaintiff; and that if they believed from the evidence that on this particular occasion the son procured the automobile with the restricted permission of his mother to go to the moving-picture theater, and, after the show was over, to return immediately home, and that after the show the son decided that he would use the car to go to the dance in another place, and he did not have the consent or permission of his mother so to do, then the plaintiff could not recover of the mother in this case. See further, Wallace v. Squires, 186 N. C. 339 (119 S. E. 569).

4. A father may recover for the loss of services of his minor son. It is not essential to this right of the parent that the child should be actually rendering services to the parent at the time of the injury. The parent's right to the services which the child is capable of rendering is sufficient to support the action. *Brawner* v. *Bussell*, 50 *Ga. App.* 840, 843 (179 S. E. 228). When the parent has not lost dominion or control over the child, but still has the power to claim the services during minority, he can recover for loss of services resulting from a tort committed at a time when the child had the ability or capability to render services. *Amos* v. *Atlanta Ry. Co.*, 104 *Ga.* 809 (31 S. E. 42).

(*a*)  Allowing a son to receive the proceeds of his own labor amounts to emancipation.  *Hargrove* v. *Turner*, 112 *Ga.* 134 (37 S. E. 89, 81 Am. St. R. 24).  However, this may be only temporary by the father's express or implied consent to the son's receiving the proceeds of his own labor, which consent may be revocable at any time, for a particular employment, in which event it does not follow that the minor has been manumitted by the father for the whole period of his minority.  *A. & W. P. R. Co.* v. *Smith*, 94 *Ga.* 107, 111 (20 S. E. 763) ; *Wilson* v. *McMillan*, 62 *Ga.* 16, 18 (35 Am. R. 115).  The father may permanently lose his parental right to the son's services and the proceeds, by express or implied consent, or by his failure to provide necessaries for his son.  Code of 1933, § 74-108, par. 3; *Vale Royal Mfg. Co.* v. *Bradley*, 8 *Ga. App.* 483 (3), 490 (70 S. E. 37) ; *Richter* v. *Virginia Carolina Chemical Co.*, 1 *Ga. App.* 344 (2) (57 S. E. 939).  Ordinarily the presumption is that the father is entitled to the earnings of his son; and this presumption must be overcome by proof of a manumission.  *Coleman* v. *Dublin Coca-Cola Bottling Co.*, 47 *Ga. App.* 369, 371 (170 S. E. 549).

(*b*)  In the defendants' answers no defense was set up that the father had manumitted his son.  The evidence showed that the father permitted the son to go to work in another town when he was sixteen years old; that from then until the injury the son worked at various jobs, paying for his board and his clothes; that his father did not contribute any of the necessaries during this time ; but that the son gave to his father what he earned above his living expenses.  There was no evidence that the father had released his claim to the services performed by his son, except that he could work upon such jobs and pay his own expenses.  There was no evidence that the father had not revoked any manumission arising from allowing him temporarily to work out and receive the proceeds of his labor to the extent of paying his own expenses, if any should arise.  See *Hunt* v. *State*, 8 *Ga. App.* 374, 376 (69 S. E. 42).  From the time the son was injured, being then eighteen years old, until he was able to work and procure another job, for over a year, the son remained at home and was cared for by his father.  The father is only suing for the diminution of his son's earning capacity during his minority.  It follows that there was no error in the charge of the court that the father could recover

damages for the diminution of his son's earning capacity during minority, if the defendants were liable; or in the refusal to give the requested instruction to the effect that if the jury believed that the plaintiff had emancipated his son, then the plaintiff could not recover damages on account of the diminution of his son's earning capacity.

(c) The plaintiff was liable for the necessaries furnished his son. Medical expenses incurred by reason of the injury complained of in this case are necessaries. Code of 1933, §§ 74-105, 20-201; *Brown* v. *Brown,* 132 *Ga.* 712, 715 (64 S. E. 1092, 131 Am. St. R. 229). There was no error in charging the jury that if they found in the plaintiff's favor he could recover the medical expenses incurred. This is true even though he had not paid them. He was liable therefor. *Kitchens* v. *Ryner,* 8 *Ga. App.* 587 (69 S. E. 1086).

5. A ground of a motion for new trial assigning error on some ruling of the court, such as a refusal of a request to charge, must be complete within itself. A request to charge must be perfect in form; and it is not perfect when an inference is required to make it correct, and there is no error in refusing such a request. *Davenport* v. *Waters,* 40 *Ga. App.* 99 (4) (148 S. E. 772); *Etheridge* v. *Hobbs,* 77 *Ga.* 531; *Cain* v. *State,* 41 *Ga. App.* 333, 340 (153 S. E. 79). A written request to charge a named principle, proposition, or theory of the case or of law is not sufficient and is too indefinite. If the movant desired a charge on a named principle or theory, he should have submitted a request that had incorporated therein the concrete proposition of law that he wished the court to charge. *Wright* v. *W. & A. R. Co.,* 139 *Ga.* 343 (3) (77 S. E. 161); *Hudson* v. *State,* 26 *Ga. App.* 596 (4) (107 S. E. 94); *Allen* v. *State,* 8 *Ga. App.* 284 (2) (68 S. E. 1009); *Rice* v. *State,* 50 *Ga. App.* 191 (177 S. E. 278). It has been held that a ground of a motion for new trial alleging that the court erred in failing to charge on the law of "involuntary manslaughter in the commission or performance of a lawful act" was not complete within itself, and could not be considered by this court. *Hudson* v. *State,* supra; *Smith* v. *State,* 125 *Ga.* 300; *Burney* v. *State,* 142 *Ga.* 812 (83 S. E. 937). Therefore it was properly held, in *Jones* v. *State,* 46 *Ga. App.* 679, 682 (169 S. E. 46), that a ground of a motion for new trial, assigning error on

the failure to give in charge an applicable principle of law, duly requested in writing, was insufficient and incomplete where the request was for the court to charge "on the question of good character." The court stated in that case that it must appear that such request embodied a sound and accurate principle of law, and that obviously a mere request to charge as above wholly fails to comply with the law and is too indefinite. So, the ground of the motion for new trial here; assigning error on a refusal of a request that the court "charge the jury on the doctrine of comparative negligence as the same prevails in the State of Georgia," even if it was applicable under the facts, was insufficient and incomplete, and such request did not embody a concrete statement of a principle of law. This assignment of error is parallel to a ground of a motion for new trial assigning error on a refusal of the court, on request, to give in charge a designated Code section. Such ground of a motion for new trial is not in proper form, and there is no error in refusing it. *Stewart* v. *Avery*, 38 *Ga. App.* 434 (144 S. E. 218); *White Sewing Machine Co.* v. *Horkan*, 17 *Ga. App.* 48 (9) (86 S. E. 257). The court did not err in refusing the request to charge as embodied in this ground. Furthermore, it was insufficient and incomplete, and presented nothing for consideration by this court.

Under the facts of this case the judge did not err in refusing a request by the defendant to charge that "it is a misdemeanor under the law of Georgia for a person to operate an automobile upon a public highway of this State while under the influence of intoxicating liquor; and in order for a person to be guilty of such a crime it is only necessary that the evidence show beyond a reasonable doubt that such person so operating the automobile was under the influence of some intoxicant to any extent whatsoever, whether drunk or not," and "that all persons aiding and abetting in the commission of a misdemeanor are principals; and if you believe from the evidence in this case that Mac Caldwell procured, counseled, aided, or abetted W. R. Evans in driving said automobile while under the influence of intoxicating liquor, then . . under the law of Georgia plaintiff could not recover for the loss of services of the said Mac Caldwell." The evidence did not authorize a finding that the plaintiff's son in riding in the automobile at the time of the accident procured, commanded, aided, or

abetted in the operation upon a highway in this State of the automobile by the defendant's son while that person was under the influence of intoxicating liquor, and was therefore engaged in an unlawful enterprise with that person and equally guilty thereof.

6. The verdict was not so grossly excessive, under the facts in the record, "as to show bias and prejudice upon the part of the jury." The medical expenses set up were $675. The verdict was for $2000. Two years and one month elapsed· between the time of the injury and the time the plaintiff's son reached his majority. The evidence authorized a finding that the injury caused a diminution in the son's earning capacity. Under the evidence in this case surely the son's earning capacity was $10 a week, and under the law the father was entitled to it all until the ·son reached his majority. The father furnished his son with all the necessaries and his living expenses from the time of his injury until his majority. The verdict will not be disturbed unless the court should suspect bias or prejudice of the jury, from its excess or inadequacy. Code of 1933, § 105-2003. The question of damages is one for the jury, and the courts should not interfere, unless the amount of the verdict is so large as to justify the inference of gross mistake or undue bias. §§ 20-1411, 105-2015. The fact that a verdict is large will not, if there is any evidence to sustain it, prevent the trial court from approving it and denying a new trial. *Southern Ry. Co.* v. *Brock,* 132 *Ga.* 858 (64 S. E. 1083); *Holland* v. *Williams,* 3 *Ga. App.* 636. This court has not the same discretion concerning a verdict as the trial judge who has approved it. *Southern Ry. Co.* v. *Brock,* supra. The trial judge may exercise a sound discretion in refusing a new trial in a case where the verdict may be decidedly and strongly against the weight of the evidence. Code of 1933, § 70-206. A generous verdict will not be set aside merely for that reason. *Bullard* v. *Rolader,* 26 *Ga. App.* 742 (107 S. E. 548); *City of East Point* v. *Hendrix,* 27 *Ga. App.* 485 (108 S. E. 623). Excessive damages are such damages as shock the moral sense to such an extent as to lead to the belief that the jury were actuated by undue or improper motives or influences. *Central R. Co.* v. *DeBray,* 71 *Ga.* 406, 422.

7. The verdict in favor of the plaintiff against both of the defendants was not without evidence to support it; and no error

of law appearing, the judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. I can not concur in the majority opinion. In addition to the facts there stated I quote the testimony of Mrs. Evans, upon examination by the plaintiff: "I owned the automobile that was in the wreck. I maintained that automobile for the pleasure and comfort of my family. . . I did not keep this car wholly for pleasure. I used it in my business. . . On some occasions when this car was not being used in connection with my bedspread business, I consented for my son, W. R., to use it. . . With respect to this occasion in February, 1931, . . I had my cook stay with my daughter that afternoon, while I went to Cleveland, and I thought I would let the children take her home; and I told W. R. to take her home; and he asked me if he could go to the show, and I said he could if he would come straight home after the show. When I told him he could have the car if he would come straight home after he got out of the show, he said if I thought he would not do that, that my daughter could go with him and bring the car back, and then I said he could have the car if he would come straight home after the show was over. I let him have the car that evening in order that he might go to the picture-show with the understanding that he would come home immediately after the show." Mrs. Evans lived in Dalton; the picture-show was in Dalton. The accident occurred while the son, W. R. Evans was driving the car to a dance at Resaca, fifteen miles distant from Dalton after the picture-show was over. The testimony as to this is not in conflict.

It is contended by the defendant that the undisputed evidence shows that the accident occurred while the son was driving the car to a dance at Resaca, fifteen miles from Dalton, and that the right to drive it at all was conditioned solely for the purpose of going to the picture-show and returning home which was in Dalton, and that any other use of the car by the son was unauthorized and in violation of the purpose for which it was obtained by him, and not directly or collaterally a part of the trip to the picture-show and back home; that the possession of the car by W. R. Evans was for a restricted purpose; that the charge quoted in

the majority opinion limited the right of the parent to restrict her child in the use and operation of her car, although it was intended for family purposes at some times; that such charge so extends the "family-car doctrine" as to make a parent, who permits her minor child to use the family car for a designated, specified, restricted purpose, liable for the tort of such minor child in using said automobile for any purpose, including a use which is in direct violation of the terms under which its possession is acquired; that such charge deprived the defendant of her principal defense, to wit: that her son was not using the car about her business, "the pleasure and convenience of the family," and that it takes away from her as a parent the right to govern the use of her own car or to govern or control the actions of her own children. It makes her liable as a master for the acts of her agents, and takes away from her the right to control and direct her agents. Error is also assigned on the court's refusal of the following request to charge the jury: "I further charge you that if you believe from the evidence that on the night of this accident W. R. Evans left his mother's home in said automobile with her permission for the restricted purpose of using the same to go to a picture-show in Dalton and of returning home immediately after the show, and if you believe that after the show W. R. Evans decided that he would use the car for the purpose of going to a dance in Resaca, and if you further believe that W. R. Evans did not have the permission or consent of his mother to use said automobile to go to a dance at Resaca, then I charge you that the plaintiff can not recover against Mrs. Eugene Evans in this case, and it would be your duty to return a verdict in her favor."

This case squarely presents the question, whether a parent who allows his child to drive his automobile at all, for the pleasure of the child, and the automobile under such circumstances becomes a "family-purpose car," may the parent restrict such child as to the time when and the place where the car may be operated by the child? Does the fact that the car is a so-called "family-purpose car" take from the parent any voice in the restriction of his children in the use and operation of the car? I can readily conceive that under the doctrine as given effect by the courts of this State, if the car is shown to be a "family-purpose car" and is being operated by a minor child, a presumption might arise that

it is operated by the consent of the parent and owner, and is about the business of the parent. I can not subscribe to the doctrine that a car once shown to be under the "family-purpose car" doctrine is conclusively presumed to continue under that rule, irrespective of any limitations or restrictions the parent may expressly put thereon. It may be well to consider *Griffin* v. *Russell,* 144 *Ga.* 275 (supra), which is the leading case in this State on the subject of the "family-car doctrine." It will be noted that Judge Lumpkin, in discussing the principles of law in that case, cited many other cases. It was alleged and proved that the minor child was allowed by the parent to operate the car at the time of the accident. Among the cases cited we find that in Daily v. Maxwell, 152 Mo. App. 415 (133 S. W. 351), the father "allowed the minor child to operate it for the family," and it was said: "We conclude that, in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father." In Stowe v. Morris, 147 Ky. 386 (144 S. W. 52, 39 L. R. A. (N. S.) 224), it was said: "They [the minor children] had the right to use it as often as and when they liked," and it was pointed out that the son "was not performing an independent service of his own, but was carrying out what, within the spirit of the matter, was the business of the father." In McNeal v. McKain, 33 Okla. 449 (126 Pac. 742, 41 L. R. A. (N. S.) 775), it will be noted that the minor son "being authorized to use it any time for that purpose," is the expression used. In Kayser v. Van Nest, 125 Minn. 277 (146 N. W. 1091, 51 L. R. A. (N. S.) 970), the minor daughter "was authorized to use it whenever she desired to do so." In Simmons v. Penn. R. Co., 199 Pa. 232 (48 Atl. 1070), it was said: "Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule can not be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of the servant's employment." In Guignon v. Campbell, 80 Wash. 543 (141 Pac. 1031), involving a car which the mother permitted different members of the family to drive in the usual manner of family conveyances, the mother was held liable for its misuse by her minor son. Judge Lumpkin said, in the *Griffin* case: "If a father or mother owning an automobile and keeping it to be used for the

comfort and pleasure of the family *should authorize a son to drive it* (italics mine) for the comfort and pleasure of the family, this would make the owner liable for the negligence of the son .in operating the machine for such purpose." In every case decided in Georgia since that time it will be noted that it was alleged and shown that the use of the car on the occasion of the accident was with the express or implied consent of the parent. *Lacey* v. *Forehand,* 27 *Ga. App.* 344 (108 S. E. 247); *Kennedy* v. *Manis,* 46 *Ga. App.* 808 (169 S. E. 319); *Petway* v. *McLeod, 47 Ga. App.* 647 (171 S. E. 225); *Espy* v. *Ash, 42 Ga. App.* 487 (156 S. E. 474); *Samples* v. *Shaw,* 47 *Ga. App.* 337 (170 S. E. 389); *Ficklen* v. *Heichelheim,* 49 *Ga. App.* 777 (176 S. E. 540); *Mitchell* v. *Mullen,* 45 *Ga.` App.* 285 (164 S. E. 278); *Curtis* v. *Ashworth,* 165 *Ga.* 782 (142 S. E. 111, 54 A. L. R. 1457).

In the present case it is alleged that W. R. Evans "with the express permission and consent of his mother was driving said car." In the *Griffin* case, supra, it is said that "a father is not liable for the tort of a minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit, merely because of the relation of parent and child." It was there decided that a car kept for the comfort and pleasure of the family, including the minor son, and being operated at the time of the accident for such purpose, will render the parent liable for the negligence of the minor child. It was not there decided nor has it anywhere been decided that because of the fact that a car was kept for the comfort and pleasure of the family the parent and owner lost all control over the time and place of the operation of the car and the conduct of the minor child. The parent is liable in such cases only because the pleasure and comfort of his family is a "part of his business," and not merely because of the relation of parent and child. In such event he, the same as any other master, retains the right to direct and control his business. It is recognized, as stated in the majority opinion, that "a master is liable for the tortious acts of his servant when done in the course of his employment, although it may be done in disobedience of the master's orders." In *Hays* v. *Hogan,* 273 Mo. 1 (200 S. W. 286, L. R. A. 1918C, 715), it was held: "The owner of an automobile maintained for the use and pleasure of his family is not liable for injuries caused by the negligence of

his son in driving it, if the son, who is a member of the family and permitted at times to use the car, has it out against orders, for his own pleasure, at the time of the accident." In the opinion this statement was made: "This record is totally barren of all evidence tending to show that J. E. Hogan [the minor son] was the agent or servant of R. S. Hogan, the father, or that the former was driving the car at the time of the injury for his [the father's] use and benefit, without, as previously stated, the facts that J. E. Hogan was a member of the former's family, that the car was purchased for family use, and that it was being driven by the latter at the time of injury, created that relation." I think the uncontradicted evidence in this case shows the son had no general permission to use the car when and where he might desire. It is evident that the permission of his mother was necessary before he would be permitted to drive the car. Under the evidence, even though this car was bought for family use, the parent owner retained the right to say where and when it might be used. If the son had been denied the use of the car for any purpose on that night, and over the express order of his mother and without her consent had taken the car out without her knowledge, I do not think she would have been liable for any resultant injury to a third person because of the negligence of her son in its operation. She allowed her son to use this car on that night to carry her cook home and then to go to the picture-show and the evidence shows that she specially restricted his use of it to coming "straight home from the show."

In Restatement of the Law of Agency, § 234, it is said: "One may be a servant, although a bad servant, in performing his master's business at a forbidden place, if the place is within the general territory in which the servant is employed. One engaged to drive an automobile in New York City would not be in the service while driving in Albany; but a servant directed to drive from New York to Albany on the west side of the Hudson would not cease to be acting within the scope of his employment while driving on the east side. In all cases it is a question of degree whether or not the difference in place is so great as to make the act done substantially different from the act authorized. *If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not*

*liable for his conduct during the trip."* (Italics mine.) "P. directs A, a traveling salesman supplied with a car, to sell goods only in Albany. The salesman drives to Schenectady to sell goods to a merchant there. While driving in Schenectady A is not within the scope of his employment." The failure of the son, in going to and from the cook's house and the picture-show and in returning home, to come the most direct way, might not be a deviation from the authority given him; but, with the express command of his mother ringing in his ears that he come straight home, his trip to a dance at Resaca was an independent venture of his own. See *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322); *Powell* v. *Cortez,* 44 *Ga. App.* 205 (160 S. E. 698); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490). If no restriction had been placed on the son's use of this car on that night, an implied permission under the family-car doctrine might have been presumed. Without such implied or express right to use the car, but on the contrary with an undisputed command not so to use it, the wrongful or negligent conduct of the son on that occasion did not render liable the mother and owner of the car. Rowland *v.* Spalti, 196 Iowa, 208 (194 N. W. 90). When she chose expressly not to make it her business to furnish a car for her son to go elsewhere than to the picture-show and straight home, she may not be held liable unless the deviation as to time and place of the use in going to and returning from the picture-show comes within the rules laid down in Restatement of the Law of Agency, §§ 233, 234. To make the family-purpose car doctrine operative, it must always be shown that its operation at the time of the injury was the business of the parent. When a car has been bought and a child of the family is allowed to drive it for his or her own pleasure, nothing else appearing, it may be presumed that such child had the authority from the parent so to operate it. If the parent afterwards withdraws this permission, the car ceases to be under the "family-purpose car" doctrine, and the parent would be no more liable for a tort committed in its operation by his child than he would be if the child had, without the parent's knowledge and consent, taken a truck devoted entirely to the parent's business, and used it for the pleasure of himself alone. The very essence of the liability of the parent for the tort of his child in such cases is dependent upon the express or implied consent of the parent to the operation of the car for the pleasure of his family.

In the present case, nothing else appearing, the son, might be presumed to have been about his mother's business in operating the car on the occasion in question. However, there was a distinct restriction on his authority so to operate such car, and therefore a distinct withdrawal of such car from the "family-car purpose" doctrine as defined by our courts. In Rowland v. Spalti, supra, it was held that proof of ownership of an automobile and the fact that the driver was a member of the owner's family merely makes out a prima facie case that it was being operated for the owner, and to avoid a finding to this effect there must be some showing to the contrary. In that case the defendant father showed by testimony that his son received consent from him "to drive the car to Knoxville," that he went to that town, and then, acting on his own motion and without defendant's knowledge or consent, "drove the car elsewhere." It was said: "Where a seventeen-year old boy was authorized by his father to drive the father's automobile to K, the consent given for that trip did not operate to expose the father to liability for wrongful act of son in departing from or exceeding the authority so given." The car comes under the family-purpose rule only when the parent consents that it may so come. This consent and authority given to children by parents so to operate a car owned by the parent may be general and at the will of the child, and not restricted as to time or place; and where such authority is given, the parent will be liable for the torts of the child in the operation of the car, for the reason that the parent has made it his or her business to furnish a car at the will of the child. The parent, however, is not liable for a tort committed by such child in operating such car unless such car is at the time under the "family-purpose rule." A consent that the car may at some times, by express consent of the parent, be operated by the child does not ipso facto make the car come under the family-purpose doctrine at all times. An express denial by the parent to the child of the use of the car takes it from under the family-purpose car doctrine, and the use of it by the child under these circumstances does not make such use "the business of the parent." Likewise, when the parent restricts the use of the car to a particular purpose, the operation of the car by the child without the knowledge or consent of the parent does not make such operation the business of the parent, with consequent liability for

a tort committed by the child in the use of the car. The majority opinion limits the authority of a parent to restrict the use by his or her child of an automobile. Authority given on one occasion becomes authority at any and all times, limited only by the whim of the child. It is literally "the whole hog or none." For the reasons stated I dissent from the judgment of affirmance.