## 28106. CAUSEY *v.* SWIFT & COMPANY.

DECIDED JULY 13, 1940. ADHERED TO ON REHEARING, JULY 31, 1940.

*Edward F. Taylor, Wilson & Vandiver,* for plaintiff.

*Joseph W. Popper,* for defendant.

BROYLES, C. J. Mrs. Causey sued Swift & Company, a corporation, to recover damages for personal injuries alleged to have been received by her in a collision, at the intersection of Montpelier and Coleman Avenues in the City of Macon, between an automobile in which she was riding and an automobile truck owned by the defendant and which was being driven by one Meadows, an employee of the defendant. On the first trial of the case a verdict for the defendant was directed, and a new trial was denied. That judgment was reversed by this court (57 *Ga. App.* 604, 196 S. E. 228). In that decision this court said: "The sole question presented for determination is whether, under the undisputed and uncontradicted testimony, the inference was demanded that at the time of the collision the defendant's truck, which was being operated by its servant and driver, was being operated by the servant while on a mission of his own, and was not at the time in the prosecution of and in the scope of his master's business." On the first trial and on the trial now under review, the undisputed testimony showed that Meadows, after driving the truck to several places in

the prosecution of his master's business, turned aside and proceeded to drive to his home for the purpose of getting his supper there; and this court held that under the evidence adduced on the first trial it failed to appear that in so doing he had made such a territorial digression as would "constitute a deviation from the master's business." On this question the court said: "There is absolutely no evidence in this record which shows with any degree of certainty how far Meadows had made a territorial detour from the territorial area of the truck's operation. It may have been a block, or it may have been two blocks. The evidence tending most strongly to show that Meadows had deviated territorially from his authorized route is in his testimony. He stated that he was 'going in an entirely opposite direction' from the route back to the defendant's plant. It appears from the evidence that the accident happened at the intersection of Montpelier and Coleman Avenues, and near Tattnall Square. There is nothing in the evidence to indicate the location of these places. While it appears from the evidence that Meadows was going to his home at 402 Winship Street, the location of 402 Winship Street nowhere appears from the evidence. So far as it appears from the evidence, the intersection of the streets where the accident occurred, or Tattnall Square, or Meadows' home to which he was proceeding, may have been in close proximity to the route by which he was required by the defendant to return with the truck to the plant.

"It was held in *Perry* v. *Lott, 38 Ga. App.* 729 (145 S. E. 479), that where there was no evidence as to what route was pursued by the driver, whether there was a slight or a gross deviation from the direct route which it was his duty to travel, it could not be said as a matter of law that the driver had made such a deviation as took him without the scope of his employment. The court can not take judicial notice of the locality of streets or squares in a city, or the distance between various streets in a city. These are not 'matters of public knowledge' which can be 'judicially recognized without the introduction of proof.'" On the trial now under review the undisputed evidence showed that Meadows was employed as a truck driver to deliver ice cream only to those places to which he was specifically directed so to do. He had the further duty, late in the afternoon, to deliver mail to the post-office, to get mail, to go from there to the Independent Laundry to pick up laundry,

and to return from there to the defendant's plant. On the afternoon of the day of the collision in question he was instructed to go to the post-office and to the laundry, and then to return to the plant. He had previously been expressly instructed not to drive the truck to his home for the purpose of getting his supper there. He went to the post-office and the laundry, but instead of then returning to the plant he proceeded to drive the truck to his home for the purpose of getting his supper; and while so proceeding, and before reaching his home, the collision occurred at the intersection of Montpelier and Coleman Avenues. The defendant introduced evidence (which was not contradicted) showing that the distance from the Independent Laundry to the defendant's plant was 2490 feet—a little less than half a mile; that the distance from the laundry, according to the route which Meadows took, to the intersection of Montpelier and Coleman Avenues was 7750 feet —about a mile and a quarter, and that the distance from said laundry to the home of Meadows (which was his destination) was 11,300 feet—a little over two miles.

· Under the above-stated uncontradicted evidence as to the distances between the several places mentioned (such evidence not having been introduced on the first trial), it clearly appears that the route taken by Meadows from the Independent Laundry to the intersection of Montpelier and Coleman Avenues on his way to his home for supper was not merely a slight, but was a gross, deviation from the direct route which it was his duty to take, namely, from the Independent Laundry to the defendant's plant. It follows that such a deviation placed him without the scope of his employment. The previous decision of this court in this cause has become the law of the case and is binding on us. That decision, in effect, held that the judgment in favor of the defendant was reversed solely on the ground that the evidence, in failing to give the distance from the defendant's plant to the home of Meadows, or from the plant to the intersection of Montpelier and Coleman Avenues, or to indicate the location of these places, failed to show whether the territorial detour made by Meadows was a slight or a gross deviation from the direct route which it was his duty to travel. That deficiency in the evidence was supplied on the trial now under review, and the court properly directed the verdict for the defendant. The cases cited in behalf of the plaintiff are dif-

ferentiated by their particular facts from this case. For instance, the decision in *Evans* v. *Caldwell*, 52 *Ga. App.* 475 (184 S. E. 440), strongly relied on by the plaintiff in error, was largely based on the "family-purpose doctrine" relative to automobiles furnished for the comfort and pleasure of one's family. That doctrine was not involved in the instant case. The refusal to grant a new trial was not error.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*

ON REHEARING.

BROYLES, C. J. After a careful reconsideration of the case and the authorities cited by counsel for both parties, we still think that under the undisputed evidence on the trial now under review, and the previous decision of this court in this case, the court did not err in directing the verdict in favor of the defendant.

*Judgment adhered to. Gardner, J., concurs.*

MacINTYRE, J., concurring specially. "Although the eating of food may be necessary to keep up an employee's vitality so as to enable him to perform the duties of his employment, ordinarily a servant can not be said to be on his master's business or acting within the scope of his employment while eating or on his way to eat. Accordingly, the relation of master and servant must ordinarily be deemed suspended while he is going to and from his meals, particularly where the servant is to board himself, and, the master is not liable for the servant's negligence while so traveling to and from meals, although the servant is driving the master's machine. This rule is especially applicable where the servant's use of the master's car is against the master's orders." 5 Blashfield Cyc. Auto. Law, 199, § 3042. "Ordinarily when the chauffeur is using his employer's automobile for the purpose of procuring his meals, he is not engaged in his master's business, and the master is not liable for his negligent acts on such a trip. . . But a different question is presented when a special trip is not made to get the meal, but the driver merely diverges from the course directed by the owner and stops to procure the meal. In such a case he may still be acting within the scope of his employment. And if the servant is directed to use the machine in order that he may return to his work sooner or for some other reason beneficial to the employer, a finding that he is acting in the owner's business in so doing may be justified." 7-8 Huddy's Cyc. Auto.

Law, 265, § 100. It should be noted that in the quotation from Huddy it is stated that if the servant is directed to use the machine in order that he may return to his work sooner, or for some other reason beneficial to the employer, a finding that he is acting in the owner's business in so doing may be justified. However, in the instant case the opposite seems to be true, that is, the servant is specifically instructed and directed not to use the machine in going some two miles off of his route to his home for supper and then return to his designated route. Thus in the instant case the going to supper, instead of enabling him to return to his work sooner, retarded his return to his work, and his leaving his route to go home to get supper was in no way beneficial to his employer, but was directly detrimental thereto on account of loss of time, and furthermore was contrary to his instructions to remain on his route and obtain his supper without leaving it. It appears from the evidence that the distance from the Swift & Company Creamery to the post-office was approximately .55 of a mile, from the post-office to the laundry approximately .28 of a mile, from the laundry back to Swift & Company Creamery "a little less than a half of a mile," from the laundry to the truck-driver's home a fraction over two miles, and from the laundry to the scene of the accident (which was on the route from the laundry to his home) about a mile and a quarter. If the driver had gone from the creamery to the post-office, then to the laundry, and then back to the creamery, as instructed to do on this specific trip, his total trip would have been approximately 1.2 miles. The point from which he left his designated route (the laundry) to the creamery was "a little less than a half of a mile," whereas the distance from the point where he left his designated route to the point where he was going on his detour or deviation (to wit, his home) was a little over two miles. The accident occurred on this deviation on his way to his home, approximately one and one-fourth miles from the laundry. It therefore appears that under the circumstances of this case the evidence demanded a finding that the deviation was not slight but gross; and the driver of the truck was acting beyond the scope of his employer's business at the time of the accident.