O. B. HINSON, Mrs. O. B. Hinson and Danny Hinson, a minor, by and through O. B. Hinson, as next friend, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17113.

United States Court of Appeals Fifth Circuit.

July 23, 1958.

Rehearing Denied Sept. 12, 1958.

Buckner F. Melton, Andrew W. McKenna, Roy B. Rhodenhiser, Jr., Jack J. Gautier, Macon, Ga., for appellant.

Seymour Farber, Morton Hollander, Dept. of Justice, Washington, D. C., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., George Cochran Doub, Asst. Atty. Gen., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This simple [1] case presents but one question for us: whether on the facts as stipulated and set out in full in the opinion of the District Court, Hinson v. United States, D.C.Ga., 156 F.Supp. 831, recovery against the United States under the Tort Claims Act, 28 U.S.C.A. §§ 1346 (b), 2671, 2674, could be sustained for injuries suffered in an automobile collision with an Army Medical Officer then en route in his own automobile to his first duty assignment.

Briefly, Captain Westcott, a medical doctor, was ordered [2] to active duty on

[1] There were four cases, injuries sustained by O. B. Hinson, loss of services of his minor son, personal injuries suffered by the minor son, loss of consortium by Mrs. Hinson by reason of her husband's injuries, all of which arose out of the same automobile accident. These were consolidated for trial below and it has been stipulated that the outcome of the appeal of the one case now before this Court shall be determinative of all four since but one question is presented.

[2] Letter Order C-9-6 issued by Headquarters Second Army, Office of the Commanding General, Fort Meade, Mary-

September 28, 1956 with pay and allowances to commence as of that date and directed to proceed from his home, Central State Hospital, Petersburg, Virginia, to Fort Sam Houston, Texas, to report not later than October 8, 1956. The question of fault in bringing about the Georgia collision on October 2 while Captain Westcott was proceeding to Fort Sam Houston is not before us as it was never reached by the Court below which held, as a matter of law, that Captain West-

land directed to Captain Westcott provided that: "By direction of the Secretary of the Army * * * following officers, * * * are ordered *to active duty* in grade currently held as Reserve Commissioned officers of the Army. On effective date of active duty (EDCSA) officers *will proceed from* their home * * * *to station* shown. *Travel* directed *is necessary* in the military service. Travel by privately owned conveyance *authorized.* Permanent change of station unless otherwise indicated * * Capt Godfrey F. Westcott, 04070367, MC, USAR. Central State Hospital, Petersburg, Va. * * * Effective Date of Active Duty * * * 28 Sep 56 * * * Station Assigned, Reporting Date * * * Stu Det, Army Med svc Sch, Brooke AMC, Ft Sam Houston, Tex, * * * report not later than 8 Oct 56." (Emphasis supplied.)

3. Army Regulations, AR 35-3035, placed Capt. Westcott in travel status for this trip and provided reimbursement to him for all travel expenses.

Section I. 2.b. *"Permanent change of station.*

"(1) The term 'permanent change of station' means the transfer or assignment of a service member from one permanent station to another. It includes the change from home or place from which ordered to active duty to first duty station upon—

"(a) Appointment,

"(b) Call to active duty,

* * * * *

"c *Travel status.* A service member will be deemed to be in travel status while performing travel between his permanent duty stations, upon public business, pursuant to competent travel orders * * * The travel status commences with departure from the permanent duty station and terminates with the arrival at the new permanent duty station."

cott, acting pursuant to these orders and in the status [3] he then occupied, was not "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346.

■■ This holding was based upon the so-called "going to and coming from

Section II. "Permanent Change of Station in United States

"3. General. *a. Mode elected by members.* Except for group travel, upon permanent change of station the service members may elect the mode of transportation unless travel is directed to be performed by Government conveyance in the orders. Transportation will be furnished or payment of travel allowances will be made for the mode utilized. When the member travels within the United States on a permanent change of station pursuant to competent orders (not designated 'group travel orders'), which do not direct travel by Government conveyance, he is entitled to one of the following:

"(1) Mileage allowance at the rate of 6 cents per mile for the official distance, or

"(2) Transportation requests, or transportation in kind, plus a per diem in lieu of subsistence or meal tickets. If transportation requests are not available to the member at the time and place required, the member may elect reimbursement for the actual cost of transportation for the mode of transporation authorized and used plus per diem or the mileage allowance prescribed in (1) above.

* * * * *

"9. Allowances payable to first permanent duty station * * *

"b. *Member of reserve components.*

"(1) When enlisted, commissioned, or appointed for immediate active duty, a member of the reserve components is entitled to travel allowances from the place of acceptance of the current enlistment, commission, or appointment to the first permanent duty station * * *

"(2) Upon call (or order) to active duty, a member of the reserve components is entitled to travel allowances from the place to which the orders to active duty are addressed to the first permanent duty station."

work" cases which form the general rule that one so engaged is not acting within the scope of his employment. We take no issue with this statement of general Georgia law which must determine this controversy, Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761. We feel, however, that analysis of the facts calls for a different result under Georgia principles.

■ The battle lines here drawn on scope of employment separate the camps into the question in its simplest most graphic form: was Capt. Westcott "going to work" or was he then already "at work" in making his way to Texas? The total circumstances under Georgia law compel the latter view.

The Government steadfastly urges that the travel directed here, as to its route or mode was a matter of complete indifference to the Army, the sole concern being that Capt. Westcott report to his assignment as ordered, and that he made use of his own automobile entirely for his own convenience and benefit. Therefore, it is contended in reliance upon United States v. Eleazer, 4 Cir., 177 F.2d 914, certiorari denied 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333; United States v. Sharpe, 4 Cir., 189 F.2d 239; and Paly v. United States, 4 Cir., 221 F.2d 958, as well as Georgia [4] cases which require that the travel undertaken must be in the furtherance of the very work assigned to the employee and subject to the control of the employer, that the United States is not subject to vicarious liability under the doctrine of respondeat superior because these vital elements are lacking.

■ Control or the right to control the manner or means of performing the task hardly seems decisive. If the relationship of master and servant exists and if what the employee is doing is in the furtherance of the master's business, i. e. in the scope of his employment, the law gives the master the right of direction and control. And even that is not dispositive for if an employee subject to such direction and control violates those orders given pursuant to the right, the master is yet liable. Evans v. Caldwell, 52 Ga.App. 475, 184 S.E. 440.

■ If control of the servant is thought to be the touchstone of vicarious liability, it is as adequately supplied here as is ever possible when driving servants are involved. For the Uniform Code of Military Justice [5] made Capt. Westcott accountable to the Army for all of his actions, including the driving of automobiles, from the date of his entrance upon active duty. This was in no way altered by the indifference of the Army to the route or mode of travel selected. While "acting in line of duty," 28 U.S.C.A. § 2671, is generally equated with traditional notions of scope of employment, Cannon v. United States, 5 Cir., 243 F.2d 71, 73, the phrase reflects that Congress had in mind, and so must we, the special factors characteristic of military activity and discipline.

■■ Hinson makes the unassailable point that under Georgia law ownership of the automobile is immaterial when it is operated by an employee in the scope of his employment, Lewis v. Miller Peanut Co., 77 Ga.App. 380, 49 S.E.2d 221; Davies v. Hearn, 45 Ga.App. 276, 164

4. Nichols v. G. L. Hight Motor Co., 65 Ga.App. 397, 15 S.E.2d 805; Graham v. Cleveland, 58 Ga.App. 810, 200 S.E. 184; Stenger v. Mitchell, 70 Ga.App. 563, 28 S.E.2d 885; Elrod v. Anchor Duck Mills, 50 Ga.App. 531, 179 S.E. 188.

5. See, e. g., Article 111, 50 U.S.C.A. § 705, now 10 U.S.C.A. § 911, which provides: "Any person subject to this code who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct." Of course, we know nothing as to whether either of these circumstances existed here. This Article is pertinent to demonstrate that it is within the omnipresent power of the military to control the driving activities of members of the armed services. It is the right of control, not the exercise of it, that is important. The wide range of Article 133, 50 U.S.C.A. § 727, now 10 U.S.C.A. § 933, "Conduct unbecoming an officer and a gentleman," also demonstrates the sweeping control which the military may exercise. Manual for Courts-Martial, United States, 1951, No. 212, p. 380.

S.E. 273, 275; Baker v. H. E. Lowe Electric Co., 47 Ga.App. 259, 170 S.E. 337; Stevens v. Moore, 211 S.C. 498, 46 S.E. 2d 73, 78, with the express or implied consent of the employer, Massachusetts Cotton Mills v. Byrd, 38 Ga.App. 241, 143 S.E. 610; 5 Blashfield, Cyc. of Automobile Law and Practice § 3078. Consent was express in these orders note 2 *supra*. This leads us no further than the starting point. For we must still determine whether it comes within the Georgia rule that "If an automobile is being negligently operated by a servant while he is at liberty from his master's service and is pursuing his own ends exclusively, the master is not responsible for any damage thus occasioned, but the rule is otherwise where the vehicle is being used for the purposes of the master and in the scope of the driver's general employment, notwithstanding it is also being used in part for the accommodation of the driver." Davies v. Hearn, supra, 164 S.E. at page 275. See also, Evans v. Caldwell, 52 Ga.App. 475, 184 S.E. 440. This latter facet of the question has some of the cut of a "deviation" case not here involved at all, but its only effect is to soften the requirements of the inquiry into the nature and purpose of the travel. It need not be shown that the sole purpose of the use of the employee's own automobile was the furtherance of the employer's business.

▆ Thus it is controlling that at the time of this collision, Capt. Westcott was performing a specific duty which had been assigned him—to *travel* to Fort Sam Houston. In executing this order to *proceed,* he made use of his private automobile with the express authority of the Army. For this the Army bore the expenses which were "necessary in the military service." In so doing he was not going *to* work, he was then engaged in the performance of one of the very duties specifically assigned to him, receiving Army pay, subject to military discipline and not on leave. His only choice was the immaterial [6] one of route and means of travel.

In this regard, the "going to work" cases are distinguished in Lewis v. Miller Peanut Co., supra, on the ground that the employee has not yet commenced his duties while en route to work. That is, he is not yet doing that which he has been ordered to do. A further distinction has been articulated in United States v. Kennedy, 9 Cir., 230 F.2d 674, that the "going to work" cases deal with relatively short trips from a residence in the vicinity.[7] The quotation by the District Court from 52 A.L.R.2d 287, 325, stating a supposed general rule [8] that long distance transfers of some permanence do not include travel as within scope of employment, is inapplicable to this case when all the factors are considered in the light of Georgia law [9] and will not permit or require a holding of nonliability.

6. "* * * [T]he principle of law is unassailable that where a servant has been instructed by the master to go to a designated place in furtherance of the master's business, said instructions not specifying which of two or more feasible routes for him to take, the servant may in his discretion, without deviation from the master's business, himself make the selection of routes." Henry v. Hoch, 76 Ga.App. 819, 47 S.E.2d 159, 162. See also, Evans v. Caldwell, supra.

7. This distinction is recognized in the annotation, Employee Driving Own Car—Liability 52 A.L.R.2d 287, which in § 8 [a] and [b], lists in support of the going to work rule, many cases in which travel was from the employee's home a relatively short distance to a fixed place of employment. The cases listed in § 8 [c] then make it clear that where more extensive travel is directed by the employer and the employee compensated therefor, he is within the scope of his employment.

8. Except for Eleazer, Sharpe and Paly, relied on by the Government here, and which necessarily rested on the state law of the states where the incidents occurred, and two nongovernment cases, one of which is clearly distinguishable, the text statement of the asserted rule is followed by abstracts of twelve cited decisions holding such an employee to be within the scope of his employment.

9. In addition to the decisions previously cited, see, Mitchem v. Shearman Concrete Pipe Co., 45 Ga.App. 809, 165 S.E.

The parties are candid in their statements that no Georgia case on all fours with this one has been found. We too have searched and found none, but there is no scarcity of authority for the proposition that when travel is directed by the employer when the act of traveling is one of the things which the employer requires of him, it is within the scope of employment. This is particularly shown to be true in Lewis v. Miller Peanut Co., supra, in which the Court held that an employee was in the scope of his employment where "the contract of employment * * * required that he [the employee] travel only by daylight * * * making trips to other cities * * * and he was paid for the time consumed in travel * * * received traveling expenses for this travel, and his employment was general." Id., 49 S.E.2d at page 223. See also, Henry v. Hoch, note 6, supra. As Capt. Westcott was required to travel, to proceed to Texas and was authorized to drive his own car in performing this duty, this fulfilled the requirement of Georgia law: "It is not enough, in order to establish liability, to show that the master has an interest in what is being done. It must also be made to appear that the servant whose act is in question has authority from the master to perform the class of service to which the act belongs. If the act is within the class, the master is bound, although the servant is forbidden to perform the particular act. If not within the class, the master is not bound." Evans v. Caldwell, supra, 184 S.E. at page 442. There is additional support for our view in decisions [10] from other jurisdictions on facts comparable to these. To the extent that many of these cases arise under the Torts Claims Act, it must be recognized, of course, that the decisions must rest, as does this one, on the law of the state where the damage occurred.

Once it is seen that this trip was made in compliance with orders which left only immaterial choices to the employee, it is clear, under the Georgia law, that Capt. Westcott was acting within the scope of his employment. In the approach which this Act requires, United States v. Alexander, 5 Cir., 238 F.2d 314, 317; Williams v. United States, 5 Cir., 252 F.2d 887, the Government is liable for his actions if they are found to have been negligent.

The case must therefore be reversed and remanded for further proceedings.

Reversed and remanded.

889; Postal Telegraph-Cable Co. v. Tucker, 33 Ga.App. 525, 126 S.E. 860; cf. Bailey v. Murray, 88 Ga.App. 491, 77 S.E.2d 103.

Although there is some indication in Lewis v. Miller Peanut Co., supra, that workmen's compensation cases are thought to be applicable to respondeat superior controversies, we have avoided reference to such decisions because of the widely divergent policy considerations in the two types of cases. See, Conversions & Surveys, Inc., v. Roach, 1 Cir., 201 F.2d 499; American Fire and Casualty Co. v. Bramlett, 5 Cir., 253 F.2d 218, 222, note 5; Banks v. Associated Indemnity Corp., 5 Cir., 161 F.2d 305 313.

10. United States v. Mraz, 10 Cir., 255 F.2d 115; United States v. Kennedy, 9 Cir., 230 F.2d 674; Marquardt v. United States, D.C.Cal., 115 F.Supp. 160; Heintz v. Iowa Packing Co., 222 Iowa 517, 268 N.W. 607; Webster v. Mountain States Telephone & Telegraph Co., 108 Mont. 188, 89 P.2d 602; Curcic v. Nelson Display Co., 19 Cal.App.2d 46, 64 P.2d 1153; Purcell v. United States, D.C. Cal., 130 F.Supp. 882, 885; Satterwhite v. Bocelato, D.C.N.C., 130 F.Supp. 825; Hopper v. United States, D.C.Tenn., 122 F.Supp. 181, affirmed per curiam, 6 Cir., 214 F.2d 129; cf. United States v. Wibye, 9 Cir., 191 F.2d 181; Colgate-Palmolive-Peet Co. v. Perkins, Tex.Civ.App., 48 S.W.2d 1007 (error refused).